[S. F. No. 14842. In Bank.—January 31, 1934.]

In the Matter of the Estate of JOHN BUCHANAN Mc-CREERY, Deceased. ANGLO–CALIFORNIA TRUST COMPANY, as Administrator, et al., Respondents, v. RAY L. RILEY, as Controller, etc., Appellant.

W. H. H. Gentry, T. H. Christiansen, James W. Hickey and A. W. Brouillet for Appellant.

Goldman & Altman for Respondents.

Todd W. Johnson and Philip D. Johnston, as *Amici Curiae* on Behalf of Respondents.

PRESTON, J.—By this appeal the controller of this state seeks to reverse an order of the superior court in the above-entitled estate. The order complained of reversed *in toto* a previous order fixing and requiring the payment of an inheritance tax under the Inheritance Tax Act of California (Deering's Gen. Laws, 1931, vol. 3, p. 4709, Act 8443), and further provided for refund of the tax theretofore paid. The facts upon which the appeal is based were stipulated and are substantially as follows:

John Buchanan McCreery died testate in February, 1931, a resident and citizen of Great Britain, owning 666⅔ shares of the capital stock of the McCreery Estate Company, a corporation organized and existing under the laws of the state of California and the certificates of stock representing said shares were in the state of California on the date of decedent's death, but had no business situs therein. Decedent's will was probated in England but ancillary proceedings were had in the Superior Court of the State of California in and for the City and County of San Francisco.

Respondents are the ancillary administrator and the widow of decedent, his sole legatee.

The inventory in said ancillary proceedings showed said shares of stock. An inheritance tax appraiser was appointed by the court in said proceedings to appraise the estate of decedent in this state and to report to the court on any inheritance tax payable to the state of California. Said appraiser thereafter reported a tax payable in the sum of $5,609.30 by reason of the transfer of said shares of stock. Said report of the appraiser was confirmed by the court and the inheritance tax on said transfer was fixed at said sum by an order of court made August 18, 1931. On the same day said tax, less the cash discount, was paid. Thereafter, and on May 4, 1932, respondents made an application to said court for a reversal of said order fixing said tax and for a refund of the tax theretofore paid. Thereafter and on October 20, 1932, said court gave its judgment and order granting this relief. From this last-mentioned order the controller has prosecuted this appeal.

Originally, the sole question raised was as to the proper construction of subdivision 3 of section 11 of said Inheritance Tax Act of California, as amended in 1929. (Stats. 1929, p. 1834.) Later, however, under an order of this court, counsel were directed to brief the following legal question: "Does the due process clause of the 14th amendment to the Constitution of the United States prevent the state of California from collecting an inheritance tax on the transfer of stock in a California corporation in the estate of a nonresident of the United States, the certificates representing the stock being physically in the state of California?" Our conclusion upon this latter question makes it unnecessary to give consideration to said question of procedure first above mentioned.

It is not disputed that under subdivision 2 of section 2 of said Inheritance Tax Act, it was the legislative intent to impose a tax upon the transfer here disclosed. This section requires the payment of a succession tax, "when the transfer is by will or intestate laws of property within this state and the decedent was a non-resident of the state at the time of his death . . . " For a confirmation of the power to impose this tax see *McDougald* v. *Lilienthal,* 174 Cal. 698 [164 Pac. 387, L. R. A. 1917F, 267], and *Estate of Miller,*

184 Cal. 674 [195 Pac. 413, 16 A. L. R. 694]. But to determine said constitutional question we must rely upon the applicable pronouncements of the Supreme Court of the United States on this subject. ▮ We have made a careful study of the several decisions cited and the net result of such holdings thus far is that, as to tangible personal property, the fourteenth amendment to the federal Constitution forbids its taxation in any other state of the United States than the one in which it is located; that as to choses in action and other intangibles, the same section forbids taxation in more than one state. The constitutional provision protects the one class of property to the same extent as the other. The only difference in the two situations is that as to intangibles the courts still apply the legal fiction of *mobilia sequuntur personam* and have thus confined the place of taxation to the state of the domicile of the owner. But this restriction has as yet been applied only to estates of decedents who were residents within the United States. (*Farmers Loan Co.* v. *Minnesota,* 280 U. S. 204 [50 Sup. Ct. 98, 74 L. Ed. 371, 65 A. L. R. 1000]; *First Nat. Bank* v. *Maine,* 284 U. S. 312 [52 Sup. Ct. 174, 76 L. Ed. 313, 77 A. L. R. 1401].) The rule which selects the domicile, as distinguished from the situs of the intangibles, was and is largely one of logic and convenience. But the reasons assigned for this selection all fail where the decedent was domiciled without the United States. It by no means seems certain that a valid rule could not have been promulgated which fixed the constructive situs of the intangibles as the place of taxation instead of the domicile of the owner. Moreover, the above cited holding does not specifically purport to fix the rule controlling the jurisdiction for taxation where the owner of the intangibles was domiciled without the United States, whether he was a citizen of the United States or a citizen of a foreign nation. Intangible property in one of the states of a nonresident of the United States receives the protection of our laws. Why may not the privilege of receiving it by transfer or succession be taxed by some state at least of the United States? And if it may be so taxed, why may not such tax be assessed in the state of the actual or constructive situs of such property?

Direct light is shed upon this question by the case of *Burnet* v. *Brooks,* 288 U. S. 378, 396 et seq. [53 Sup. Ct.

457, 77 L. Ed. 844, 86 A. L. R. 747], wherein the decedent was a British citizen domiciled in Cuba, where he died owning foreign bonds and stock in foreign corporations, the physical evidences of which were all situated in the state of New York. It was held that under the United States Revenue Act of 1924, which purported to tax that part of the gross estate of said decedent "which at the time of his death is situated in the United States" said intangibles were so situated in the United States. One of the contentions made in said cause was that such taxation was forbidden by the due process clause of the fifth amendment to the Constitution of the United States. In an able and extended opinion, carefully reviewing and quoting copiously from previous decisions of the courts, it was held that said choses in action had a situs in the United States and consequently they might be subjected to a death duty tax by the Congress and that said fifth amendment set up no barrier to the collection of such a tax. It therefore seems self-evident that if said choses in action were property within the United States, they were at the same time property within the state of New York; also that if the fifth amendment did not forbid taxation of the transfer of said property by the United States, the fourteenth amendment should not forbid a similar tax, if imposed by the state of New York.

Applying this reasoning to the case before us (stock in a domestic corporation), why may not the state of California tax the transfer of the property of a nonresident of the United States, which property has its actual or constructive situs within the jurisdiction of this state? To so hold, we encounter no question of the proper distribution of power between the states as the rights of no other state are involved. The question is: Has a state the power to tax the transfer of property within its boundaries, belonging to persons who were domiciled without the United States? The logic of the Burnet case, *supra,* seems to justify the right of the state of California to tax such a transfer.

That case disposes also of the further question raised by respondents that to tax the transfer is to violate the Hay-Pauncefote Treaty now subsisting between the United States and Great Britain, in that it would require the payment of a tax by subjects of the latter country where, under similar circumstances, citizens of the former would not

be liable for such a tax. The discrimination claimed is not present for the rule here announced applies to American citizens who are nonresidents of the United States and domiciled in Great Britain as well as to citizens there domiciled of Great Britain itself. Besides, it seems peculiarly proper at this juncture to follow our own decisions until the federal courts rule that such taxation is without the power of the state.

The order appealed from is reversed.

Curtis, J., Langdon, J., Waste, C. J., Thompson, J., Shenk, J., and Seawell, J., concurred.