Cecilia (Cécile) y María Rufina (Marie-Ruffine) Piacentini, demandantes y apeladas, *v.* Hon. R. Sancho Bonet, sustituído por Rafael Buscaglia, Tesorero de Puerto Rico, demandado y apelante.

Núm. 8255.—*Sometido:* Junio 10, 1941. *Resuelto:* Enero 23, 1942.


*Hon. Procurador General George A. Malcolm y M. Rodríguez Ramos,* *Procurador General Auxiliar,* abogados del apelante; *José A. Poventud,* abogado de las apeladas.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Don Andrés Emanuelli Costa falleció en Adjuntas, Puerto Rico, el día 2 de julio de 1934, bajo testamento por el cual instituyó como única heredera, en pleno dominio, a su hermana doña María Angela Emanuelli viuda de Antoni, ciudadana de y domiciliada y residente en Francia, quien a su

vez falleció en noviembre 15, 1939, dejando por sus únicas herederas a sus dos sobrinas, las aquí demandantes, quienes han sido siempre ciudadanas de y residentes en Francia.

Los bienes dejados por el Sr. Emanuelli a su hermana, y por ésta a las demandantes, ascendían a un total de $65,041, y pueden dividirse en cinco grupos, a saber:

1. Dinero efectivo en un Banco en New York_____ $6,258.80
2. Dinero efectivo en un Banco en Puerto Rico_____ 1,273.13
3. Bonos y acciones de Gobiernos y compañías extranjeras, depositados en el National City Bank en New York, EE. UU. de A._____ 27,287.35
4. Capital comanditario en la Sociedad A. Emanuelli & Co., S. en C., con valor nominal de $20,499.39 y valor real no mayor de_____ 10,000.00
5. Acciones, pagarés, saldo de cuenta corriente, crédito hipotecario y efectos situados en Ponce_____ 20,221.72

$65,041.00

En enero 18 de 1936 las demandantes notificaron al Tesorero la defunción de ambos causantes y alegaron, en cuanto a la herencia de doña María Angela Emanuelli, que la totalidad de dicha herencia no estaba sujeta a la contribución insular de herencia: (a) porque la causante nunca residió en Puerto Rico y fué siempre ciudadana de y residente y domiciliada en Francia, en donde falleció; y (b) porque siendo intangibles los bienes hereditarios—con excepción de $3.37 en efectivo y un reloj y leontina valorados en $20, los que están dentro de la excepción legal de $200—no sólo no han sido gravados por la Asamblea Legislativa, al ser transmitidos en pleno dominio por un extranjero no residente a sus herederos, si que tampoco hubieran podido serlo constitucionalmente, ya que su *situs* para fines contributivos no se encontraba en Puerto Rico y sí en Francia, donde tenía su domicilio la testadora.

En enero 30, 1936, el Tesorero notificó a las demandantes informándoles que les había concedido "aquella exención que la ley determina, o sea la referente a propiedad mueble intan-

gible que tenía su situs en la residencia de la causante''; que las participaciones hereditarias sujetas a tributación habían sido valoradas en $41,953.04, o sea $20,976.52 para cada heredera; y que le había impuesto a cada una de ellas una contribución de $1,314.90, o sea un total de $2,629.80.

Llevado el caso ante la Junta de Revisión e Igualamiento, en apelación contra la decisión del Tesorero, dicha junta resolvió excluir de la valoración hecha por el Tesorero la suma de $6,258.80 que la testatora dejó en efectivo en poder del National City Bank of New York, en la ciudad de New York, ''por ser propiedad mueble situada fuera de Puerto Rico, y pertenecer a un no residente de Puerto Rico.'' La valoración quedó así reducida a $35,694.24; y tomando esa suma como base, el Tesorero impuso a cada una de las demandantes una contribución de $1,033.25, o sea un total de $2,066.50, suma que las demandantes pagaron bajo protesta, juntamente con la de $268.65 por intereses devengados hasta la fecha del pago. Para recobrar la suma total de · $2,335.15 pagada bajo protesta, más los intereses legales, costas y honorarios, las demandantes radicaron demanda ante la Corte de Distrito de Ponce.

Contestó el demandado negando que el capital comanditario en la Sociedad A. Emanuelli & Cía., S. en C., tuviera un valor real de $10,000 y alegando en contrario que el valor real de dicho capital asciende a $20,499.39. Negó, además, que los bienes sobre los cuales se reclamó exención fueran intangibles o que tuvieran su situs en Francia, y alegó en contrario que los bienes sobre los cuales se cobró la contribución de herencia, su situación y su valor son como sigue:

1. Dos depósitos bancarios en Ponce, Puerto Rico, que en junto importan_____ $1,269.76
2. Capital comanditario en la sociedad A. Emanuelli & Co., S. en C., tasado por el Tesorero en_____ 20,499.39
3. Saldo en cuenta corriente en la propia sociedad comanditaria por _____ 8,901.72

| | |
|---|---:|
| 4. Crédito garantizado hipotecariamente, çuyo principal asciende a_____ | 5,000.00 |
| 5. Joyas ($20) y efectivo en caja ($3.37), que monta todo a_____ | 23.37 |
| | $35,694.24 |

Alega además el demandado que todos los bienes arriba descritos son tangibles; que el situs de dichos bienes se encuentra en Puerto Rico y no en Francia; y que dichos bienes están sujetos a contribución de herencia de acuerdo con las leyes vigentes y especialmente la núm. 99 de 29 de agosto de 1925 (Leyes de 1925, pág. 791), estando dichas leyes en armonía con los preceptos de la Constitución Federal y de la Ley Orgánica de Puerto Rico.

En marzo 28, 1939, la corte inferior dictó sentencia a favor de las demandantes, ordenando la devolución de la suma reclamada con intereses al 6 por ciento anual desde junio 12, 1936, hasta su completo pago, sin costas y sin honorarios de abogado. No conforme con dicha sentencia, el Tesorero apeló, y para sostener su recurso alega que la corte inferior erró al declarar sin lugar la excepción previa a la demanda; al resolver que los bienes intangibles tenían su situs exclusivo en Francia y no estaban sujetos a contribución en Puerto Rico; al resolver que los bienes tangibles estaban exentos de contribución por no exceder de $200 su valor total; y al declarar con lugar la demanda. Por ser una sola la cuestión legal envuelta, consideraremos todos dichos señalamientos conjuntamente.

 El estatuto por virtud del cual se impuso y cobró la contribución en el presente caso, es el artículo 1 de la ley núm. 99 de 29 de agosto de 1925, según fué enmendado por la ley núm. 43 de 24 de abril de 1931 (Leyes de 1931, pág. 369), y que lee así:

"Artículo 1.—Todos los bienes inmuebles en Puerto Rico, y cualquier participación en ellos, pertenecientes a residentes o no recidentes en Puerto Rico o fuera de Puerto Rico; todos los bienes mue-

bles en Puerto Rico o fuera de Puerto Rico pertenecientes a resi-
dentes en Puerto Rico; y todos los *bienes muebles en Puerto Rico
pertenecientes a personas no residentes en Puerto Rico,* que por tes-
tamento o abintestato, o por herencia o donación cualquiera efectuada,
cuya intención fuera otorgar la posesión, la nuda propiedad o el
usufructo después del fallecimiento del donante, se trasmitiesen a
cualquier persona, sociedad, institución o corporación en fideicomiso
o con otro carácter, estarán sujetos a una contribución que más
adelante se expresa; . . ." (Itálicas nuestras.)

Sostiene el Tesorero apelante que siendo los heredados
por las demandantes "bienes muebles en Puerto Rico per-
tenecientes a personas no residentes en Puerto Rico," su
trasmisión por testamento está sujeta a la contribución de
herencia de acuerdo con el citado estatuto.

Que los bienes que constituyen la herencia y sobre los
cuales se ha impuesto la contribución son bienes "muebles"
es cuestión ya resuelta por esta Corte Suprema en *McCormick
Vda. de McKinley* v. *Domenech,* 44 D.P.R. 644, 645. Se tra-
taba en dicho caso de recobrar contribuciones impuestas
sobre depósitos de dinero, certificados de bonos y acciones
y pólizas, depositados en bancos radicados fuera de Puerto
Rico, por el testador, quien era residente en Puerto Rico.
Al resolver que dichos bienes estaban sujetos a contribución
de herencia, esta Corte Suprema se expresó así:

"El artículo 368 del Código Político, modificado y ampliado por
la ley núm. 99 de 1925, página 791, impone contribución por herencia
a todos los bienes inmuebles y muebles pertenecientes a habitantes
de Puerto Rico. Los créditos del fenecido por el dinero, los bonos
y las acciones que tenía *son bienes muebles intangibles,* y están su-
jetos a contribución de acuerdo con esa ley, lo mismo que sus pólizas
de seguro, que debemos entender son pagaderas a la sucesión por no
haberse hecho alegación en contrario." (Itálicas nuestras.)

Sentado, pues, que bienes muebles intangibles pertene-
cientes a un testador residente en Puerto Rico y depositados
fuera de la Isla de Puerto Rico, están sujetos a contribu-
ción de herencia, nos toca resolver ahora si esa contribución
puede ser legalmente impuesta cuando los bienes muebles.

intangibles se encuentran depositados en Puerto Rico y el testador era una persona que residía fuera de la isla.

El lenguaje de la Ley de Contribución sobre Herencia, artículo 1, supra, es tan claro, que no podemos tener duda alguna en cuanto a que la intención del legislador fué la de que se impusiera la contribución a toda trasmisión hereditaria de bienes muebles intangibles situados o depositados en Puerto Rico y pertenecientes a un testador residente fuera de esta Isla. Sostienen, sin embargo, las demandantes apeladas—y así lo resolvió la corte inferior—que la imposición de la contribución a bienes muebles intangibles situados o depositados en Puerto Rico es ilegal y constituye una violación de sus derechos constitucionales, garantizados por la Enmienda 14 de la Constitución Federal y por la Ley Orgánica Insular.

La cuestión envuelta en este recurso es nueva en esta jurisdicción, pero ha sido considerada y resuelta tanto por las cortes federales como por algunas jurisdicciones estatales, como se verá por la jurisprudencia que pasamos a examinar.

En *Blackstone* v. *Miller*, 188 U. S. 189, 47 L. Ed. 439, resuelto en el año 1903, se trataba de un testador domiciliado y fallecido en el Estado de Illinois, quien dejó grandes sumas de dinero depositadas en cuenta en un banco en Nueva York. El Estado de New York impuso y cobró contribución de herencia sobre dicho depósito. Al resolver que la imposición de tal contribución era legal, la Corte Suprema Federal se expresó así:

"Sin duda esta facultad por parte de dos estados para imponer contribuciones basándose en principios diferentes y más o menos inconsistentes, resulta en alguna injusticia. Es de sentirse también que un solo estado sea visto imponiendo contribuciones, por un lado basándose en el hecho del poder, y por el otro lado, al mismo tiempo, de acuerdo con la ficción de que en las sucesiones después del fallecimiento, *mobilia sequuntur personam* y que el domicilio lo gobierna todo. Pero estas inconsistencias no infringen ninguna regla de derecho constitucional."

La regla sentada por *Blackstone* v. *Miller,* supra, fué seguida en numerosos casos, hasta el año 1930, cuando la cuestión fué presentada de nuevo a la Corte Suprema en el caso de *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204, 74 L. Ed. 371. En dicho caso, Taylor, el testador, tenía su domicilio y falleció en Nueva York. Entre sus bienes figuraban bonos negociables y certificados de deudas expedidos por el Estado de Minnesota y por dos municipios de dicho estado. El testador había poseído y guardado dichos bonos y certificados durante mucho tiempo, en New York. El Estado de Nueva York impuso contribución a la trasmisión testamentaria de dichos valores. El Estado de Minnesota también impuso contribución por el mismo concepto. Al presentarse la cuestión por primera vez ante la Corte Suprema de Minnesota, ésta sostuvo que las obligaciones públicas negociables eran algo más que meras evidencias de deudas y que, al igual que los bienes tangibles, sólo podía imponérseles contribución allí donde se encontraren depositadas, sin tomar en consideración el domicilio de su dueño. Más tarde, después de haberse resuelto el caso de *Blodgett* v. *Silberman,* 277 U. S. 1, 72 L. Ed. 749, al solicitarse la reconsideración, basándose en la decisión de dicho caso y en la dictada en *Blackstone* v. *Miller,* supra, la Corte Suprema de Minnesota se creyó obligada a considerar los bonos y certificados en cuestión como simples derechos de acción *(choses in action)* y sostuvo la validez de la contribución. La Corte Suprema Federal, con el voto disidente de sus jueces asociados Sres. Holmes y Brandeis, revocó la sentencia de la Corte Suprema de Minnesota, expresándose así:

*"Blackstone* v. *Miller*, supra, y ciertas opiniones aprobatorias, prestan apoyo a la doctrina de que ordinariamente los derechos de acción *(choses in action)* están sujetos a contribución tanto en el domicilio del deudor como en el del acreedor; que dos estados pueden imponer contribución, basándose en diferentes y más o menos inconsistentes principios, sobre la misma trasmisión hereditaria de tal

propiedad sin infringir la Enmienda 14a. La tendencia inevitable de esa doctrina es perturbar las buenas relaciones entre los estados y producir el descontento que se esperaba habría de desaparecer después del establecimiento de la Unión. The Federalist, Núm. VII. Su efecto en la práctica ha sido malo; tal vez dos terceras partes de los estados han tratado de evitar el mal recurriendo a leyes de exenciones recíprocas. Ha sido fuertemente atacada como cuestión de principio. Habiendo reconsiderado los argumentos que la sostienen, a la luz de nuestras más recientes decisiones, nos vemos obligados a declararla insostenible. *Blackstone* v. *Miller* no puede ya ser considerado como una correcta exposición de la doctrina legal prevaleciente; y para evitar malas interpretaciones queda definitivamente derogado.

"Se han sugerido cuatro puntos de vista diferentes en cuanto al situs para fines contributivos de obligaciones públicas negociables. Uno lo fija en el domicilio del dueño; otro en el domicilio del deudor; el tercero donde se encuentren los documentos, físicamente presentes; y el cuarto, dentro de la jurisdicción en donde el dueño ha hecho que dichos documentos se conviertan en parte integrante de un negocio local. Si cada estado puede adoptar uno de esos puntos de vista para imponer una contribución, es obvio que los mismos bonos podrían ser declarados presentes para fines contributivos en dos, o tres, o cuatro sitios al mismo tiempo. Esa sorprendente posibilidad sugiere una falsa premisa.

"La doctrina actualmente aprobada por esta Corte es la de que ningún estado puede imponer contribución a cosa alguna que no esté dentro de su jurisdicción sin violar la Enmienda 14a."

La doctrina sentada por la Corte Suprema Federal en *Farmers Loan & Trust Co.* v. *Minnesota*—al efecto de que los estados y territorios carecen de facultad para imponer contribución a aquellos bienes intangibles que estando situados dentro de su territorio tienen su situs contributivo en otro estado o territorio—ha sido aplicada en numerosas decisiones posteriores. Véanse: *Union Central Life* v. *Tesorero,* 19 D.P.R. 900; *Domenech* v. *U. P. R. Sugar Company,* 289 U. S. 739, 77 L. Ed. 1489, confirmando la sentencia de la Corte de Circuito, 62 F. (2d) 552; *First National Bank* v. *Maine,* 284 U. S. 312, 76 L. Ed. 319; *Baldwin* v.

*Missouri,* 281 U. S. 586, 74 L. Ed. 1059; *Rhode Island Hospital Trust Co.* v. *Doughton,* 270 U.S. 69, 70 L. Ed. 475.

En ninguno de los casos que ya hemos citado se consideró o resolvió en manera alguna la verdadera cuestión envuelta en el presente litigio, o sea si un estado o territorio puede legal y constitucionalmente imponer una contribución de herencia sobre bienes intangibles situados dentro del estado o territorio y pertenecientes a una persona residente y domiciliada en un país extranjero.

En el caso de *Burnet* v. *Brooks,* 288 U. S. 378, 77 L. Ed. 844, decidido en 1933, el testador, quien era súbdito de la Gran Bretaña, residente en Cuba, y no se había dedicado a negocio alguno en los Estados Unidos, dejó en este último país bonos de gobiernos y corporaciones extranjeras, bonos de corporaciones americanas, acciones extranjeras y un balance de un depósito en un banco. Al sostener la validez de la contribución impuesta por el Comisionado de Rentas Internas, sobre dichos bienes intangibles, la Corte Suprema Federal se expresó así:

"Son dos las cuestiones que se presentan, (1) si la propiedad en cuestión está comprendida dentro de estas disposiciones, y (2) si en el caso de que se consideren aplicables, dichas disposiciones son válidas bajo la Enmienda Quinta de la Constitución Federal. Las decisiones de las cortes inferiores contestaron la primera pregunta con una negativa.

"PRIMERA. La primera cuestión es una de intención legislativa. En el caso de un no residente de los Estados Unidos, se requería que se inventariase y avaluase aquella parte del caudal hereditario 'que en la fecha de su muerte está situado en los Estados Unidos.' En la interpretación de esta cláusula debe tenerse presente el propósito que se persigue. El Congreso estaba ejercitando su facultad de imponer contribuciones. Al definir el sujeto de la imposición, el Congreso hizo una descripción general del situs de la propiedad. El estatuto no estableció distinción alguna entre la propiedad tangible y la intangible. No exceptuó las intangibles. No exceptuó las garantías (*securities*). Salvo lo previsto, no exceptuó las deudas a favor de un no residente por deudores residentes. Tanto en cuanto a tangibles como intangibles, fijó el situs como el factor determi-

nante, y creeemos que es claro que a lo que se refiere es a la propiedad que, de acuerdo con principios aceptados, puede ser considerada como que tiene un situs en este país 'para los fines del ejercicio del poder federal de imponer contribuciones. Más aún, en cuanto concierne a la intención del Congreso, creemos que los principios así implícitamente invocados por el estatuto eran los principios previamente declarados y hasta entonces sostenidos. Es enteramente inadmisible asumir que al ejercer su facultad federal el Congreso estaba legislando sin tener en consideración la doctrina existente, o interpretar su intención a la luz de decisiones en cuanto a la facultad de los Estados que no fueron dictadas hasta varios años más tarde. Se ha insistido en el argumento de que la referencia al situs debe, en cuanto a intangibles, ser considerada como que lleva envuelto el principio de *mobilia sequuntur personam* y así, por ejemplo, que los bonos aquí en cuestión aun cuando están físicamente en Nueva York deberían ser considerados como situados en Cuba, en donde residía el finado. Empero, el Congreso no legisló una máxima. Cuando el estatuto fué aprobado, estaba bien establecido que el poder fiscal podía alcanzar tales obligaciones, basándose en que éstas tenían un situs allí donde estaban físicamente situadas. En vista de que las obligaciones así actualmente presentes en este país eran consideradas como que tenían un situs aquí para fines contributivos, no podemos decir que el Congreso en su amplia discreción, abarcando toda la propiedad 'situada en los Estados Unidos,' tuvo la intención de excluir tales obligaciones de la totalidad del caudal hereditario que debe ser declarado y avaluado.''

En la decisión en *Burnet* v. *Brooks,* supra, la Corte Suprema Federal citó con aprobación la dictada en *DeGanay* v. *Lederer,* 250 U. S. 376, 63 L. Ed. 1042, en la que se dijo:

''La cuestión certificada es: Si un extranjero no residente es dueño de acciones, bonos e hipotecas garantizadas con propiedades en los Estados Unidos, o pagaderas por personas o corporaciones allí domiciliadas; y si los réditos de las mismas son cobrados y remitidos a dicho no residente por un agente domiciliado en Estados Unidos; y si el agente tiene la posesión física de los certificados de acciones, los bonos y las hipotecas, ¿están dichos réditos sujetos a contribución sobre ingresos, de acuerdo con la ley de octubre 3, 1913?

''La cuestión sometida se reduce a esto: ¿Son los réditos de las acciones, bonos e hipotecas en poder de la Pennsylvania Company, derivados de propiedades poseídas en los Estados Unidos? Se ha

presentado un hábil argumento al efecto de que los certificados de acciones, bonos e hipotecas no son propiedades; que no son otra cosa sino evidencias del derecho dominical sobre intereses que son propiedades; que la propiedad, en un sentido legal, representada por los documentos, existiría aun cuando la evidencia física de su existencia fuese destruída. Empero, somos de opinión que estos refinamientos no son decisivos de la intención congresional al usar el término 'propiedad' en este estatuto. A menos que se probare lo contrario, se presume que las palabras estatutarias han sido usadas en su sentido ordinario y usual, y con el significado que usualmente se les atribuye. De acuerdo con el entendido general y con el significado común que usualmente se atribuye a tales términos descriptivos, los bonos, las hipotecas, y los certificados de acciones son considerados como propiedades. Estatutos estatales y federales los tratan con frecuencia como propiedades y no como meras evidencias del interés que representan. . .

"No tenemos duda alguna de que las obligaciones (*securities*) aquí envueltas son propiedades. ¿Son ellas propiedades dentro de los Estados Unidos? Se insiste en que la máxima *mobilia sequuntur personam* es aplicable en este caso, y que el situs de la propiedad estaba en el domicilio del dueño en Francia. Empero, esta corte ha declarado con frecuencia que la máxima, a lo sumo una ficción, debe ceder ante los hechos y circunstancias de los casos que así lo requieran; y que los pagarés, los bonos y las hipotecas pueden adquirir un situs en un lugar distinto del domicilio del dueño, y ser alcanzados allí por las autoridades fiscales."

No tenemos duda alguna en cuanto a que si la testadora en el caso de autos hubiese tenido su domicilio y fallecido dentro de un estado o territorio de la Unión Americana, el Gobierno de Puerto Rico no podría, de acuerdo con la decisión en *Farmers Loan and Trust Co.,* supra, imponer contribución de herencia sobre las obligaciones o bienes intangibles físicamente situados en Puerto Rico. Empero, la razón fundamental que tuvo la Corte Suprema para revocar su decisión en *Blackstone* v. *Miller*—evitar la perturbación de las buenas relaciones que deben existir entre los estados—no puede ser invocada en el presente caso, pues se trata, como en *Burnet* v. *Brooks,* supra, de una testadora residente y fallecida en un país extranjero. No puede,

pues, ocurrir conflicto alguno entre dos o más estados de la Unión.

El caso de *In Re McCreery's Estate*, 220 Cal. 26, 29 P. (2d) 186, envolvía la misma cuestión que nos presenta el caso de autos. El Estado de California impuso y cobró contribución de herencia sobre un número de acciones de una corporación doméstica, depositadas dentro de dicho estado. El testador era ciudadano de y residía en la fecha de su muerte en Gran Bretaña. La Corte Suprema de California sostuvo la validez de la contribución, diciendo:

"Hemos hecho un cuidadoso estudio de las varias decisiones citadas y el resultado neto de las mismas hasta la fecha es que, en cuanto a bienes personales tangibles, la Enmienda Catorce de la Constitución Federal prohibe la imposición de contribuciones en cualquier otro estado de los Estados Unidos que no sea aquel dentro del cual se encuentren situados los bienes; que en cuanto a derechos de acción y otros intangibles, la misma sección prohibe la imposición de contribución en más de un estado. La disposición constitucional protege una clase de propiedad en el mismo grado que a la otra. La única diferencia en las dos situaciones es que en cuanto a los intangibles las cortes todavía aplican la ficción legal de *mobilia sequuntur personam* y en esa forma han limitado el sitio de la contribución *al estado* del domicilio del dueño. *Pero esta restricción hasta la fecha ha sido aplicada solamente a los bienes hereditarios de finados que eran residentes de los Estados Unidos.* (Citas.) La regla que selecciona el domicilio, como una cosa distinta al situs de los intangibles, era y es una regla lógica y conveniente. Pero las razones aducidas en favor de tal selección caen por su base cuando el finado estaba domiciliado fuera de los Estados Unidos. No vemos razón alguna por la cual no haya podido promulgarse una regla válida fijando el situs constructivo de los intangibles como situs contributivo en vez del domicilio del dueño. Más aún, la decisión arriba citada no trata específicamente de fijar la regla que gobierna la jurisdicción para fines contributivos cuando el dueño de los intangibles estaba domiciliado fuera de los Estados Unidos, en el caso de que fuera un ciudadano de Estados Unidos o un ciudadano de una nación extranjera. Los bienes intangibles pertenecientes a un no residente de los Estados Unidos, situados dentro de un estado, reciben la protección de nuestras leyes. ¿Por qué no ha de poder imponerse contribución, por lo menos por uno de los estados de los Estados Unidos, al pri-

vilegio de recibir dichos bienes por traspaso o por herencia? ¿Y si puede imponerse tal contribución, por qué razón no ha de poder imponerse en el estado del situs actual o constructivo de tales bienes?

"El caso de *Burnet* v. *Brooks,* 288 U. S. 378, 77 L. Ed. 844, arroja luz directa sobre esta cuestión. . . . . En una hábil y extensa opinión, revisando cuidadosamente y citando copiosamente decisiones anteriores de las cortes, se sostuvo que dichos derechos de acción tenían un situs en los Estados Unidos y consecuentemente que podían ser gravados con una contribución de herencia por el Congreso y que dicha Enmienda Quinta no interponía obstáculo alguno para el cobro de tal contribución; que parecía por lo tanto evidente que si dichos derechos de acción eran propiedad dentro de los Estados Unidos, también eran al mismo tiempo propiedad dentro del Estado de Nueva York; y también que si la Enmienda Quinta no prohibía la imposición por los Estados Unidos de una contribución sobre el traspaso de tales propiedades, la Enmienda Catorce tampoco debería prohibir una contribución similar, si ésta fuera impuesta por el Estado de Nueva York.

"Aplicando este razonamiento al caso ante nos (acciones en una corporación doméstica), ¿por qué no ha de poder el Estado de California imponer una contribución al traspaso de la propiedad de un no residente de Estados Unidos, cuando esa propiedad tiene su situs actual o constructivo dentro de la jurisdicción de este estado? Para sostener que sí, no encontramos cuestión alguna en cuanto a la debida distribución de facultades entre los estados, toda vez que no están envueltos los derechos de algún otro estado. La cuestión es: ¿tiene un estado la facultad de imponer contribución al traspaso de propiedades dentro de sus límites, pertenecientes a personas que estaban domiciliadas fuera de los Estados Unidos? La lógica del caso de *Burnet,* supra, parece justificar el derecho del Estado de California a gravar tal traspaso."

En el caso *In re Lloyd's Estate,* 185 Wash. 33, 52 P. (2d) 1269, el Estado de Washington impuso contribución a depósitos bancarios dejados en Seattle por Lloyd, quien murió intestado y estaba domiciliado en British Columbia. La Corte Suprema de dicho estado sostuvo la legalidad de la contribución, expresándose así:

"La verdadera y vital distinción entre los dos casos, sin embargo, es ésta: en el caso de *Lyons* (175 Wash. 115, 26 P. (2d) 615), el finado era un ciudadano de los Estados Unidos domiciliado dentro de

su territorio. En el presente caso, el finado estaba domiciliado en un país extranjero. El caso no envuelve cuestión alguna que afecte el derecho internacional, ni derechos de tratados o medidas de reciprocidad. Se trata simplemente de la facultad del estado, en cuanto pueda estar limitada por restricciones constitucionales.

" *　　*　　*　　*　　;*　　*　　*

''Pero aquí tenemos una situación de hechos distinta, según ya hemos visto. No es posible contienda alguna entre estados. No puede ocurrir desconcierto o conflicto de sentimientos entre ellos. Ningún estado, además del de Washington, está aquí interesado. La ventaja que de otro modo pudiese perder dicho estado no habría de ganarla ningún otro estado. En resumen, la razón para la regla, basada en una ficción legal, no existe, y por consiguiente la regla no tiene ni propósito ni eficacia en este caso. Aplicar la regla en un caso como éste equivaldría a conformar la ocasión para adaptarla a la regla, en vez de aplicar una regla para hacer frente a las circunstancias. Los casos citados de la Corte Suprema de los Estados Unidos y también el caso de *Lyons*, rigen la facultad del estado en sus relaciones con otros estados de la Unión, pero no son aplicables cuando las relaciones interestatales no están envueltas.

''Con excepción de las inhibiciones que surgen de las relaciones entre los distintos estados, y en ausencia de alguna regla restrictiva de derecho o convenio internacional, no existe ninguna restricción constitucional del poder soberano del estado para imponer una contribución de herencia.''

En el caso de *Blodgett* v. *Silberman,* 277 U. S. 1, 72 L. Ed. 757, citado con insistencia por las apeladas, no tiene a nuestro juicio la importancia que se le atribuye. La única cuestión envuelta en dicho caso era la de si el Estado de Connecticut podía legalmente imponer una contribución de herencia sobre ciertas propiedades que un Sr. Hirsch, domiciliado y fallecido en Stamford, Connecticut, había dejado en el Estado de Nueva York. Las propiedades envueltas eran un interés o participación en una sociedad mercantil de New York; certificados de acciones en corporaciones; bonos y certificados de adeudos de los Estados Unidos; una cuenta de ahorros en un banco en New York; una póliza de seguro de vida en una compañía del mismo estado. Todos los documentos representativos de dichas obligaciones estaban guar-

dados en cajas de seguridad en Nueva York y nunca habían estado en Connecticut. Se resolvió, que siendo dichos bienes intangibles, el estado del domicilio del testador podía imponer una contribución de herencia, aun cuando los documentos que evidenciaban dichos bienes estuviesen depositados fuera de dicho estado, y aun cuando la transferencia estuviese sujeta a contribución en otra jurisdicción. La cuestión sobre si el Estado de New York podía imponer una contribución sobre la transferencia de dichos intangibles no estaba envuelta en el caso. Solamente se resolvió, aplicando la máxima *mobilia sequuntur personam*, que el Estado de Connecticut podía imponerla.

De acuerdo con la jurisprudencia que hemos examinado, debemos resolver que la trasmisión hereditaria de los bienes intangibles arriba descritos, sobre la cual se ha impuesto y cobrado la contribución cuya devolución se reclama, ha sido legalmente gravada, sin que se haya violado precepto alguno de la Constitución Federal o de la Carta Orgánica de Puerto Rico. La imposición de dicha contribución no solamente no crea conflicto alguno en las relaciones armónicas que deben existir entre los estados de la Unión, si que tampoco puede estar en conflicto con el poder soberano del Gobierno Nacional, pues es sabido que la contribución federal sobre herencias no es aplicable a las trasmisiones hereditarias de bienes situados en Puerto Rico.

Carece a nuestro juicio de méritos la contención de las demandantes apeladas de que la imposición y cobro de las contribuciones en cuestión constituye una violación de ''la vigente convención o tratado entre Estados Unidos y Francia, prohibitivo de discrímenes contributivos.'' El artículo que se alega ha sido violado dice así:

''Artículo 7.—En todos los Estados de la Unión cuyas leyes vigentes lo permitan, mientras dichas leyes permanezcan en vigor y con igual extensión, los franceses gozarán del derecho de poseer bienes muebles e inmuebles con los mismos títulos y en igual forma que los ciudadanos de los Estados Unidos. Estarán en libertad para disponer

de dichos bienes en la forma que desearen, ya sea gratuitamente o por valor recibido, por donación, testamento o en cualquiera otra forma, al igual que dichos mismos ciudadanos, *y en ningún caso estarán sujetos a contribuciones sobre traspasos, herencias o cualesquiera otras diferentes de aquellas pagadas por dichos ciudadanos, o a contribuciones que no sean igualmente impuestas."* Consular Convention 1853, arts. 7 y 13. Treaties and Conventions, 1889, pág. 350. Fed. Stat. Ann., Vol. 7, pág. 551.

La ciudadanía francesa de la testadora nada ha tenido que ver con la imposición de las contribuciones que se reclaman. Éstas no son impuestas ni a la persona ni a los bienes hereditarios como tales. Se imponen a la trasmisión por herencia de bienes hereditarios situados en Puerto Rico y pertenecientes a una persona domiciliada en un país extranjero. Si la testadora Sra. Emanuelli hubiese sido una ciudadana americana domiciliada en Francia, la trasmisión hereditaria de los bienes intangibles que dejó en Puerto Rico estaría sujeta a la misma contribución de herencia que le ha sido impuesta siendo ciudadana de y residente en Francia. No habiéndose impuesto contribuciones diferentes a las que vienen obligadas a pagar las trasmisiones hereditarias de bienes intangibles de ciudadanos de Estados Unidos no residentes en Puerto Rico y domiciliados en un país extranjero, no puede decirse que se haya cometido discrimen alguno contra las demandantes. Si sostuviéramos que por el mero hecho de ser la testadora ciudadana de Francia, la trasmisión hereditaria de sus bienes no está sujeta al pago de la contribución que estaría obligada a pagar si hubiese sido ciudadana de Estados Unidos, estaríamos sancionando un discrimen en contra de nuestros ciudadanos no residentes y en favor de los franceses no residentes. El artículo 7, supra, da a los franceses el derecho a reclamar igualdad ante la ley, mas no el de reclamar preferencias que la ley no concede a los ciudadanos de este país.

*La sentencia recurrida debe ser revocada y en su lugar debe dictarse otra desestimando la demanda e imponiendo*

784

*las costas a las demandantes apeladas, sin incluir honorarios de abogado.*

El Juez Asociado Sr. Snyder no intervino.

EN MOCIÓN DE RECONSIDERACIÓN

Febrero 18, 1942.

En enero 23 de 1942 dictamos sentencia revocando la dictada por la Corte de Distrito de Ponce en 28 de marzo de 1939 y desestimando la demanda.

La representación de las demandantes apeladas, en una extensa moción nos pide que reconsideremos y revoquemos nuestro fallo y que, en su lugar, confirmemos el de la corte inferior.

Hemos dado a dicha moción la más cuidadosa consideración, por tratarse de una cuestión de trascendental importancia, por primera vez presentada en esta jurisdicción y por merecerla el profundo estudio que de ella hiciera la representación de las demandantes. Y hemos llegado a la conclusión de que no ha lugar a reconsiderar la sentencia dictada, la cual debe quedar en pie, no solamente por los fundamentos expuestos en la opinión que le sirvió de base, si que también por los que pasamos a exponer.

Los bienes hereditarios sobre los cuales se impuso y cobró la contribución, aún cuando técnicamente son *intangibles,* tienen un *situs* comercial en Puerto Rico. El capital comanditario en la sociedad A. Emanuelli y Cía., representa una inversión de dinero en Puerto Rico, la que produce réditos que son enviados al socio comanditario residente fuera del país. Otro tanto sucede con el saldo de la cuenta corriente que el comanditario tenía en dicha sociedad. Los $5,000 dados a préstamo y garantizados con hipoteca sobre inmuebles radicados en Puerto Rico, producen intereses que van a parar a manos del acreedor hipotecario no residente, para ser gastados fuera del país que los produce.

Todas esas inversiones de dinero hechas en Puerto Rico, a tipos de interés más alto que los que se pagan en otros

países, gozan de la protección de nuestro gobierno y de nuestras leyes. Y parece justo que al ser trasmitidas por herencia contribuyan en la misma medida que lo hacen las inversiones de los residentes en el país al sostenimiento de los gastos de nuestro gobierno.

Si la imposición de una contribución de herencia a la trasmisión de bonos y acciones de gobiernos y corporaciones extranjeras,` pertenecientes a un finado. extranjero y no residente en Estados Unidos, fué sostenida en *Burnet* v. *Brooks,* 288 U. S. 378; y si fué válida la imposición de la contribución sobre acciones en una corporación doméstica, pertene- cientes a un inglés que en la fecha de su muerte residía en la Gran Bretaña, como se sostuvo en *In re McCreery's Estate,* 220 Cal. 26, no conocemos ninguna razón de ley ni de equidad, ni tampoco objeción alguna de derecho constitucional que nos obligue a declarar inválido el 'cobro de la contribución de herencia en el caso de autos. Más aún, nos parecería injusto para los contribuyentes residentes en el país si sostuviéramos que un extranjero no residente en esta isla tiene el privilegio, por la sola .razón de su residencia en el extranjero, de invertir su dinero en Puerto Rico y gozar de sus réditos, sin que sus herederos estén obligados a pagar contribución por ese capital al adquirirlo por herencia.

*No ha lugar a la reconsideración.*