JUANA GONZÁLEZ DÍAZ, ETC., Plaintiff and Appellant, *v.* SOL LUIS DESCARTES, SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. 10937.   Argued November 4, 1953.—Decided February 12, 1954.

*Gabriel de La Haba* and *Rafael Baragaño, Jr.,* for appellant. *José Trías Monge, Attorney General,* and *Arnaldo P. Cabrera, Assistant Attorney General,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The problem for our consideration is limited to determining whether under our Income Tax Act the profit made by a nonresident foreigner in the sale of his share in a

commercial partnership domiciled in this island is taxable in Puerto Rico.

■ Plaintiff, Juana González Díaz, is the sole and universal heir of María Díaz Miyares widow of Abarca, who died in Spain in 1947. Her ancestor was a limited partner of the partnership Sucesores de Abarca, Ltd., organized and domiciled in Puerto Rico where its commercial activities developed. By public deed of December 30, 1940 Enrique Abarca Sanfeliz, as attorney-in-fact of María Díaz Miyares widow of Abarca sold to Ángel Abarca Portilla every title, right and share that his principal might have in the aforesaid partnership for the price of $34,000 which the attorney-in-fact admitted having received. When the principal learned of the conveyance, she rejected it, but because of the World War then going on she was unable to come to Puerto Rico until 1946 in order to challenge it. Once in Puerto Rico she reached a friendly settlement with the purchaser, Angel Abarca Portilla. It was thus set forth in a public deed executed on July 24, 1946, entitled "Deed of Settlement and Ratification of Acts and Contracts and other Particulars." In that deed the sum of $255,642.31 is fixed as the price of the interest or share of the aforesaid ancestor in the partnership, and it is made clear in the deed, agreed and stipulated that the latter sum includes the sum of $96,448.20 which is the amount of the current account of the limited partner in the corporation; that of $31,827.90 as interest on the current account at 6% from December 30, 1940—date of execution of the original deed by the attorney-in-fact—until July 1, 1946; and the sum of $127,366.21, value of the limited share, plus other benefits in money, stocks, etc., received by the acquirer, Abarca Portilla. The Treasurer of Puerto Rico—now Secretary of the Treasury—determined that in the sale of that capital asset by the Widow of Abarca, plaintiff's ancestor, there had been a benefit amounting to $120,194.11, on which she should pay income tax. Subsequently, he

reduced that sum to $88,366.21, when plaintiff admitted that she ought to pay a tax on the amount of $31,827 which her ancestor had received as interest on the current account. After the corresponding deficiency had been notified, the proper administrative steps had been taken, and the case heard in the former Tax Court of Puerto Rico, the latter reduced the sum of $88,366.21, determined by the Treasurer as profit, to $58,775.77,[1] and it concluded that the plaintiff was bound to pay an income tax on the latter amount. It rendered judgment to that effect and the plaintiff appealed. She now contends that the trial court erred in holding that the profit obtained by María Díaz Miyares widow of Abarca in the sale of her share in the partnership Sucesores de Abarca, Ltd., was taxable under the provisions of the Income Tax Act "because it was source of income within Puerto Rico pursuant to § 19 (c) (5) of the Act, even if at the time the deed of sale was executed she was a Spanish citizen, a nonresident and noncitizen of Puerto Rico and a person not engaged in business in Puerto Rico"; and that said determination "violates the constitutional rights of the plaintiff-appellant established by the Constitution of the United States and by § 2 of the Organic Act of Puerto Rico . . . in depriving her of her property without due process of law."

It is undeniable that during the years in question María Díaz Miyares widow of Abarca was a Spanish citizen residing in Spain. It is likewise undeniable that the corporation of which she was a limited partner was organized in the island of Puerto Rico, that it had its business situs here and that the bulk of its business activities developed here. The

---

[1] The reduction was made because the former Tax Court of Puerto Rico favored the petitioner in the second cause of action determining that the sum of $29,590.44 (plaintiff claimed a deduction of $30,440.44) was not taxable because it constituted increments to the limited partnership, and that the acquirer had already paid the Treasurer the corresponding income tax on that amount.

There is no controversy as to the amount of $29,590.44, declared as deductible by the court, since the Secretary did not appeal from the judgment rendered.

quintessence of plaintiff's contention, however, is that the share of her ancestor in the partnership of which she was a limited partner was an incorporeal property, intangible, and that since she was a nonresident of this island the *situs* of those intangibles was Spain and not Puerto Rico; therefore, the Government of this island lacks the power to tax such intangibles. Plaintiff, however, states in her brief that "she wants to make clear that she is not discussing or doubting the right of the Legislature to enact laws levying income taxes on the profits that a nonresident, noncitizen of Puerto Rico, may have upon selling an incorporeal or intangible property, within or without Puerto Rico, if that intangible consists of shares of Puerto Rican corporations, *shares in industrial or commercial partnerships of Puerto Rico*, Government bonds of Puerto Rico or of insular private enterprises and other similar enterprise." And that "it is so well-settled in the jurisprudence [2] ... that more than one state may constitutionally levy a tax on the same conveyance, that it would be ridiculous to discuss that question again. But the tax may only be levied when the jurisdiction to tax is based on a statute authorizing it and as long as the state demanding it can prove its taxing power over the intangible or the person. Should there be no statute clearly imposing the tax on the taxable event, or should the state have no jurisdiction over the person because he is a nonresident, or power over the thing because it is not located within its boundaries, then, there is no taxing jurisdiction and to impose a tax would be unconstitutional." (Italics ours.)

We turn now to the merits of the case:

Section 19 (a) (2) of the Income Tax Act (Act of 1925,

---

[2] In making the former statement plaintiff cites the cases of *Mc Culloch* v. *Maryland*, 4 L. Ed. 579; *Blackstone* v. *Miller*, 47 L. Ed. 439; *Curry* v. *McCanless*, 83 L. Ed. 1339; *Graves* v. *Elliot*, 83 L. Ed. 1357; *Tax Commission* v. *Aldrich*, 86 L. Ed. 1358; *Graves* v. *Schmidlapp*, 86 L. Ed. 1097; *Central Hanover Bank* v. *Kelly*, 87 L. Ed. 1282; *Treichler* v. *Wisconsin*, 94 L. Ed. 37.

p. 400) as amended by Act No. 31 of April 12, 1941, pp. 478, 508, provides:

"In the case of a nonresident individual not a citizen of Puerto Rico the following items of gross income shall be treated as income from sources within Puerto Rico.

". . . . . . .

"(2) *The amount received as partnership profits* or dividends from a domestic corporation or other than a corporation, . . ." .(Italics ours.)

Did appellant's ancestor obtain "partnership profits" in selling her interest in the partnership of which she was a limited partner? This question should be answered affirmatively since she obtained for her share, which had an original value of $34,000—her contribution to the partnership—a much higher price in 1946. The difference between both values, that is, between her original contribution to the partnership and the price at which she sold it resulted in a "partnership profit" of the corporation of which she was a part. It has been so decided by the jurisprudence we have been able to find on that line, and we agree. Under some statutes such profit is considered as ordinary income and under others as a "capital gain." In either case the resulting profit is taxable as a partnership profit. 6 Merten's, *Law of Federal Income Taxation*, p. 189, § 35.27; *Estate of Herbert B. Hatch*, 14 T.C. 251, 254; *Estate of Aaron Lowenstein*, 12 T. C. 694, 699; *Louis Karsch*, 8 T.C. 1327; *Appeal of Waren E. Brown*, 4 T.C. 56; *Dudley T. Humphrey* v. *Commissioner*, 32 B.T.A. 280; *United States* v. *Shapiro*, 178 F. 2d 459; *Swiren* v. *Commissioner*, 183 F. 2d 656; *Commissioner of Internal Revenue* v. *Smith*, 173 F. 2d 470; *Long* v. *Commissioner*, 173 F. 2d 471; *Goodman* v. *Commissioner*, 200 F. 2d 681.

The former conclusion would be enough to affirm the judgment from which this appeal was taken. However, we deem it advisable to discuss other grounds—also discussed at length by the appellant—by virtue of which we likewise

reach the conclusion that the judgment appealed from should be upheld.

We have before us a tax problem. It is to the Income Tax Act and to the jurisprudence established on that subject that we must look for the solution of the problem. We must only resort to the Civil Code, a supplement to the Act which regulates taxation, in order to fill any gaps in the special Act.[3] We say this because the appellant lays great emphasis on a particular Section of that Code. We shall hence apply the special Act—the Income Tax—and we shall examine the jurisprudence in connection with the matter at issue.

Appellant insists that the interest of her ancestor in the partnership of which she was a member was intangible property and hence that the *situs* thereof was the residence of its owner, that is, Spain. As a result of that statement, she reaches the conclusion that Puerto Rico lacks power to collect a tax on the benefits accrued. We agree with appellant that the interest or share was intangible property— *Blodgett* v. *Silberman*, 72 L. E. 749, 757; *De Ganay* v. *Lederer*, 63 L. Ed. 1042—. But we disagree that merely because her ancestor was a nonresident of Puerto Rico, such intangible property has no taxable *situs* in this island. Appellant's contention is fundamentally based on the ancient maxim *mobilia sequuntur personam*, that is, that movable things follow [the law of] the person.[4] This maxim was the outgrowth of conditions which have largely ceased to exist, and of an age when personal property consisted principally of articles pertaining, as the name indicates, to the person of the owner, such as gold and silver, domestic animals, etc. As this property was, in primitive times, usually kept under the personal supervision of the owner, and was often

---

[3] Section 12 of the Civil Code, 1930 ed., provides that:

"In matters which are the subject of special laws, any deficiency in such laws shall be supplied by the provisions of this Code."

[4] Section 10 of the Civil Code provides that: "Personal property is subject to the laws of the nation of the owner thereof..."

carried about by him on his journeys, the principle became incorporated in law that its locality (*situs*) was determined by the domicil of the owner, and that his rights with respect to such property were fixed by law of that domicil. In matters of taxation, however, and as respects the taxing of personal, tangible or intangible property of nonresidents, considerable modifications have been made upon the ancient maxim. The rule has grown up in modern times that legislatures may deal with the personal as well as with the real property of nonresidents within their jurisdiction. *Eidman* v. *Martínez*, 184 U.S. 578, 583. This Court has already held that intangible personal property belonging to a testator not domiciled in Puerto Rico and which is deposited or located within the Island, is subject to an inheritance tax. *Piacentini* v. *Buscaglia, Treas.*, 59 P.R.R. 764. To that same effect see *Burnet* v. *Brooks*, 77 L. Ed. 844; *In re McCreery's Estate*, 29 P. 2d 186. It has been also held that a state may, consistently with the Constitution, tax nonresidents with respect to income derived from property or business within the State. *Shaffer* v. *Carter*, 252 U. S. 37, 64 L. Ed. 445; *Travis* v. *Yale & T. Mfg. Co.*, 252 U. S. 60, 64 L. Ed. 460; *People ex rel. Monjo* v. *State Tax Commission*, 218 App. Div. 1, 217 N. Y. Supp. 669, 90 A.L.R. 486. See *Postley* v. *Sec. of Treasury, ante*, p. 822.

In connection with the former maxim, the National Supreme Court in *First Bank Corp.* v. *Minnesota*, 301 U. S. 234, holds the following at page 241:

"*Mobilia sequuntur personam,* which has won unqualified acceptance when applied to the taxation of intangibles, *Blodgett* v. *Silberman*, 277 U. S. 1, 9–10, states a rule without disclosing the reasons for it. But we have recently had occasion to point out that enjoyment by the resident of a state of the protection of its laws is inseparable from responsibility for sharing the costs of its government, and that a tax measured by the value of rights protected is but an equitable method of

distributing the burdens of government among those who are privileged to enjoy its benefits. See *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308.

"The economic advantages realized through the protection, at the place of domicil, of the ownership of rights in intangibles, the value of which is made the measure of the tax, bear a direct relationship to the distribution of burdens which the tax effects. These considerations support the taxation of intangibles at the place of domicil, at least where they are not shown to have acquired a business situs elsewhere, as a proper exercise of the power of government. Like considerations support their taxation at their business situs, for it is there that the owner in every practical sense invokes and enjoys the protection of the laws, and in consequence realizes the economic advantages of his ownership."

Of that maxim it has also been said that it "merely means that the situs of personal property for purposes of taxation is the domicil of the owner unless there is a statute to the contrary, or ... in case of intangible property, it has acquired a business situs [5] in a state other than the one where the owner is domiciled." *In re Wheeling Steel Corp. Assessment,* 115 W. Va. 553, 177 S. E. 535, 104 A.L.R. 802.

Plaintiff's ancestor was not a citizen of Puerto Rico, nor of the United States, nor did she live here. Nor did she live in a state of the American union. Her domicil was in a foreign country. Therefore, there is no controversy between the Commonwealth of Puerto Rico and a state of the American Nation. Neither is there a controversy between two states of our country. Consequently, we may very properly say that here "the reason for the rule (*mobilia sequuntur personam*), built upon a legal fiction, does not exist, and therefore the rule has neither purpose nor efficacy in this case. To apply the rule in such a case as this, would be shaping the occasion to meet the rule instead of

---

[5] For the definition and scope of the phrase "business situs" see 76 A.L.R. 806; 79 A.L.R. 346; *Curry* v. *McCanless,* 307 U. S. 357, 83 L. Ed. 1339; *First Bank Corp.* v. *Minnesota,* 301 U. S. 234, 238; 51 Am. Jur. 480.

applying a rule to meet 'the circumstances. The cases cited from the United States Supreme Court...govern the power of the state in its relation with other states of the Union, *but they are not applicable where relations between states are not involved."* Piacentini v. Buscaglia, *supra,* p. 776, citing from the case of *In re Lloyd's Estate,* 185 Wash. 33, 52 P. 2d 1269. (Italics ours.) See also, *In re McCreery's Estate,* 220 Cal. 26, 29 P. 2d 186.

It is beyond discussion that the interest that María Díaz Miyares widow of Abarca had in the partnership of Sucrs. de Abarca, Ltd., was an intangible. *Blodgett v. Silberman, supra,* p. 758; *Humphrey v. Commissioner,* 32 B.T.A. 280. But for tax purposes personal intangible property may be separated from the owner and taxed where actually located. *Hill v. Carter,* 47 F. 2d 869. Intangible property may also, as has been seen, acquire a business situs other than the place where its owner is domiciled. *First Bank Corp. v. Minnesota, supra,* 79 A.L.R. 344, 346, 76 A.L.R. 806; 104 A.L.R. 805; 51 Am. Jur. 480, § 469. And when the taxpayer extends his activities with respect to his intangibles, outside the place of his domicile, the state where those activities develop may tax such intangibles. *Curry v. McCanless,* 307 U. S. 357. In the case at bar the owner of the interest in Sucrs. de Abarca was a foreigner who lived in Spain, but she had an interest in a corporation organized and domiciled in Puerto Rico, where it developed its activities. That share therefore had a business situs in Puerto Rico and could be taxed by our Government.

The power to tax is an incident of sovereignty. *Graves v. Schmidlapp,* 315 U. S. 657, 86 L. Ed. 1099. A sovereign who intends to tax some particular property or right is bound to express its intention to tax in clear and unambiguous language. *Eidman v. Martínez, supra.* In the instant case Puerto Rico has expressed its purpose of levying an income tax on any "amount received as partnership profit." The

phrase "partnership profit" includes not only those determined periodically by the partnership, but also those which a partner may derive from the sale of his interest and share in the partnership.[6] The purpose of taxing such profits appears in the afore-cited statute of Puerto Rico clearly, specifically and accurately. By virtue thereof, the obligation on the part of the plaintiff to pay a tax on the profit obtained by her ancestor is clear. But, to elaborate further, the obligation of paying a tax also appears from the other reasons set forth in this opinion. "To exact high taxes from American citizens and at the same time, either by legislative silence or Treasury inaction, permit nonresident aliens to escape does not lend itself to a sense of justice."[7]

The judgment appealed from will be affirmed.

Mr. Justice Sifre agrees with the result.

---

[6] Section 4 of the Income Tax Act provides that:

"The term 'profits' means any distribution made by a partnership to its members and participants out of its earnings obtained after February 28, 1913."

And § 15 thereof provides that:

"(a) The term 'gross income' includes gains, profits, and income derived from ... *partnership profits,* securities, or the transaction of any business carried on for gain or profit, or gains or profits *and income derived from any source whatever;* ..." (Italics ours.)

[7] Montgomery B. Angell, *The Nonresident Alien: A Problem in Federal Taxation of Income,* XXXVI Columbia Law Review 908, 910.