Estate of Miller: Miller, Respondent, vs. The State, Appellant.

*January 12—February 10, 1942.*

For the appellant there were briefs by the *Attorney General, Harold H. Persons,* assistant attorney general, and *Neil Conway,* inheritance tax counsel, and oral argument by *Mr. Persons* and *Mr. Conway.*

For the respondent there were briefs by *Miller, Mack & Fairchild,* and oral argument by *J. Gilbert Hardgrove,* all of Milwaukee.

FAIRCHILD, J.    The law affecting taxation of intangibles involved in transfers intended to become effective as to "possession or enjoyment" at or after the death of the donor must be considered settled as giving power to the state to impose such tax where the legal interests created are within the control of the state.    In *Curry v. McCanless* (1939), 307 U. S. 357, 372, 59 Sup. Ct. 900, 83 L. Ed. 1339, 123 A. L. R. 162,

Mr. Justice STONE in treating with facts somewhat analogous to those in the present case said : "In effecting her purposes, the testatrix brought some of the legal interests which she created within the control of one state by selecting a trustee there and others within the control of the other state by making her domicile there. She necessarily invoked the aid of the law of both states, and her legatees, before they can secure and enjoy the benefits of succession, must invoke the law of both."

It is likewise settled in Wisconsin that a transfer by means of a voluntary irrevocable trust whereby the donor retains the income for life and provides for the completion of a transfer of the corpus after death is taxable under sec. 72.01 (3), Stats. 1939, as a transfer intended to take effect in possession or enjoyment at or after death. *Estate of Waite* (1932), 208 Wis. 307, 242 N. W. 173.

The record discloses that each sister, under a valid contract, united her interest with that of the other and so arranged matters that neither could use any part of the whole so created other than the income from what represented her share before the creation of the trust. Though the total property was bound by the agreement to the survivor, the transfer was so conditioned as to keep in each sister the enjoyment of her share until her death. Each owner gave up the management of her property to the trustee, but not for the sole benefit of the other contributor. There was no immediate transfer of complete economic enjoyment of either share. The present transfer was to the trustee who was to withhold a further transfer until one donor or settlor was a survivor of the other. The transfer of Margaret W. Miller's interest in the trust property to her sister became effective as to "possession or enjoyment at or after such death."

There is a contention on respondent's part that the transfer was based "upon a valuable and adequate consideration" and therefore does not come within the intendment and purpose of

the statute. But the character of the transaction excludes the possibility of the existence of a commercial dealing or of an exchange in which a valuable and adequate consideration, as that term is used in testing a transaction of this nature, has passed so as to bar the levying of this tax.

The transaction was essentially an arrangement whereby the two sisters combined their capital in order to facilitate investment and management. The fact that the method involved a transfer in trust has no effect upon the issue of taxability because the statute expressly includes such form of transfer as well as one that is direct. Each retained for her own benefit her proportionate share of the income. The pooling of the separate interests during both lives cannot change the very apparent nature of the transfer of decedent's share to her survivor. The result is the depletion after death of the estate of Margaret W. Miller and for this depletion she did not in her lifetime receive the adequate consideration necessary for an exemption from the succession tax; nor was her estate increased thereby.

The opinion of this court in the case of *Will of Koeffler* (1935), 218 Wis. 560, 260 N. W. 638, 261 N. W. 711, 99 A. L. R. 944, in no way conflicts with the conclusion here reached. In that case it was held that a transfer of property through a marriage settlement whereby the beneficiary was to receive a cash settlement and a certain allowance during widowhood in lieu of dower was not taxable under the provisions of the Inheritance Tax Law, the claim under the contract amounting to a debt against decedent's estate. That decision rests in part upon recognition given to the nature of such transactions so long familiar to the law.

Sec. 72.01 (9), Stats. 1939, provides for the exemption of transfers of property from nonresident decedents in case of reciprocal exemptions in other jurisdictions. Under this section transfers of personal property, except tangible personal property having an actual situs in this state, of a non-

resident decedent, made taxable under our law, is not subject to such tax if, at the time of death of such decedent, a "like exemption" was given "by the laws of the state, territory or district of the decedent's residence in favor of residents of this state." The proposition is advanced that the dominant purpose of the reciprocal law is to adopt for Wisconsin and to promote elsewhere the adoption of the policy of taxing intangibles at the domicile only. Multiple taxation has usually been resorted to with apologies but the right of the state of the trustee's domicile to lay a tax of this sort and the right of the state in which decedent was domiciled to impose such a tax upon the same transfer has been recognized. Quoting again from the *Curry Case, supra,* pp. 372, 373: "We can find nothing in the history of the Fourteenth amendment and no support in reason, principle, or authority for saying that it prohibits either state, in the circumstances of this case, from laying the tax."

If we assume that the Italian law allows a "like exemption," there is still the question as to whether this section with its phraseology limiting the provision to "state, territory or district" extends to tax laws of a foreign country. The reciprocal exemption statute is a means provided for solving the vexing problem of multiple taxation. *Farmers Loan Co. v. Minnesota* (1930), 280 U. S. 204, 50 Sup. Ct. 98, 74 L. Ed. 371, 65 A. L. R. 1000; Brady, Death Taxes—Developments in Reciprocity (1929), 15 A. B. A. J. 465; Oakes, Development of American State Death Taxes (1941), 26 Iowa Law Review, pp. 451, 471–474.

The purpose of the statute and its expressed scope appear in the words of the statute, and as it is drawn it does not include residents of foreign countries. This interpretation is sustained by a comparison of our statute with the terms of statutes in other states. Although the movement toward reciprocity has not been confined alone to the states of the Union, and has been the subject of discussion in international.

conventions, *Burnet v. Brooks* (1933), 288 U. S. 378, 399, 53 Sup. Ct. 457, 77 L. Ed. 844, the situation calling for relief was and is primarily a domestic one. Multiple taxation between the various states of the Union tends "to disturb good relations among the states and produce the kind of discontent expected to subside after establishment of the Union." *Farmers Loan Co. Case, supra,* p. 209. The statutes of several states extend the exemption to foreign countries; at least three limit it to states of the United States; several, including Wisconsin, extend it to states and territories; and several include possessions of the United States (see note (1941) Reciprocity in Non-domiciliary Inheritance Taxation of Intangibles, 26 Iowa Law Review, pp. 694, 699, 700). It is urged that this interpretation renders the exemption provision as applied to the case at bar unconstitutional or at least open to grave doubts as to its constitutionality and should therefore be avoided if possible under the recognized and well-established rules of statutory construction.

The argument sought to be advanced by respondent is that: "In imposing this tax on Caroline K. Miller, the state, under the Fourteenth amendment, and its legislature, under the Wisconsin bill of rights, are bound to accord to her the equal protection of the law. Having in mind the dominant purpose of subsection (9) of section 72.01, there is no logical ground on which to discriminate between the recipient of a transfer from a deceased resident of another American state and the recipient of a transfer from a deceased resident of a foreign state or taxing sovereignty." But as indicated in our interpretation of the statute, the purpose of the exemption provision was to meet a domestic problem, a question frequently arising between neighboring states, and one appealing to a sense of fairness. And this state might or might not extend the exemption. Having extended it and included within its scope all that is necessary to satisfy the domestic condition intended to be dealt with the classification in ques-

tion is germane to its purpose and proper under the constitutional provisions cited. *Welch v. Henry* (1938), 305 U. S. 134, 144, 59 Sup. Ct. 121, 83 L. Ed. 87: "Any classification of taxation is permissible which has reasonable relation to a legitimate end of governmental action."

A legislative policy of avoiding double taxation is valid and a classification may be adopted to attain that end. *Lawrence v. State Tax Comm.* (1932) 286 U. S. 276, 284, 52 Sup. Ct. 556, 76 L. Ed. 1102:

"The equal-protection clause does not require the state to maintain a rigid rule of equal taxation, to resort to close distinctions, or to maintain a precise scientific uniformity; and possible differences in tax burdens not shown to be substantial or which are based on discriminations not shown to be arbitrary or capricious do not fall within constitutional prohibitions. [Citations.]"

In *Income Tax Cases* (1912), 148 Wis. 456, 508, 134 N. W. 673, 135 N. W. 164, L. R. A. 1915 B, 569, Ann. Cas. 1913 A, 1147, it is said: "The sum and substance of it is that the Fourteenth amendment never was intended to lay upon the states an unbending rule of equal taxation; the states may make exemptions, levy different rates upon different classes, tax such property as they choose, and make such deductions as they choose, and, so long as they obey their own constitutions and proceed within reasonable limits and general usage, there is no power to say them nay."

The argument of improper classification rests mainly upon the proposition that the tax is one "upon the right of succession," and that the exemption provision must accordingly be approached from the standpoint of the recipient. The validity of a reciprocity provision as applied to a transfer of a trust estate located in Missouri from a resident of Massachusetts was sustained by the supreme court of Missouri in the case of *St. Louis Union Trust Co. v. State* (Mo. 1941), 155 S. W. (2d) 107.

In the last analysis the tax in question is, in the language of the statute, a tax levied upon the *transfer,* the distinction between a tax levied upon the right to transmit and one upon the right to receive being primarily of importance in measuring the value of the right transferred for the purposes of tax computation. Pinkerton and Millsaps, Inheritance and Estate Taxes (1926), pp. 21, 25, §§ 24, 28; *Estate of Benjamin* (1940), 235 Wis. 152, 159, 292 N. W. 304. The purpose of the exemption provision is to exclude a particular transfer in the event of a like exemption by another state. The classification is upon that basis and directed to that end only.

The transfer is subject to the tax and the order of the county court must be reversed.

*By the Court.*—Order reversed, and cause remanded with direction to enter an order in accordance with this opinion and to determine the amount of the tax.