## Estate of Wieboldt: State, Appellant, v. First Wisconsin Trust Company and others, Respondents.

*October 9—November 5, 1958.*

For the appellant there were briefs by the *Attorney General* and *Harold H. Persons,* assistant attorney general, attorneys, and *Richard E. Williams,* inheritance tax counsel, of counsel, and oral argument by *Mr. Persons.*

For the respondents there was a brief by *Frank P. Anderwald* of Chicago, Illinois, for the German Consulate, K. Heinrich Knappstein, and Theodor Heuss, and by *Wengert & Spenner* of Milwaukee, for the First Wisconsin Trust

Company, and oral argument by *Mr. Herbert A. Spenner* and *Mr. Anderwald.*

WINGERT, J. We are of opinion that the bequest to Dr. Heuss is not exempted from the Wisconsin inheritance tax, either by our statutes or by treaty. Therefore, notwithstanding its laudable purpose, we must hold the bequest taxable, and reverse the contrary judgment of the county court.

We shall consider first the pertinent Wisconsin statutes, and then the various treaties claimed by respondent to prohibit taxation of the transfer by this state.

1. *Wisconsin statutes do not exempt the bequest.*

The pertinent provisions are subs. (1) and (3) of sec. 72.04, Stats.

Sub. (1) defines the general exemption applicable to transfers for charitable purposes. Manifestly it does not reach the transfer now under consideration, for it limits the exemption to cases where the recipient of the transfer is a corporation or voluntary association *organized under the laws of this state,* a national organization of veterans, the Red Cross, a bank or trust company *of this state,* or an individual *residing in this state* as trustee in trust for purposes *in this state.* Dr. Heuss is not a corporation nor an association, he does not reside in this state, and the purpose of the bequest is not to be carried out in this state.

Sec. 72.04 (3), Stats., is likewise inapplicable to the present case. That subsection provides that the charitable exemptions granted in sub. (1) ". . . shall extend to transfers to or for the use of corporations, . . . associations, foundations, or *trustees located in,* and those organized or established under the laws of, *any other state, commonwealth, territory, or district,* exclusively for . . . charitable . . . purposes, . . ." if the law of the other state, commonwealth,

territory, or district grants a like and equal exemption to transfers from decedents resident therein to comparable recipients in Wisconsin.

Passing the point that Dr. Heuss is not a "trustee," because trusts are not recognized in Germany and the will expressly states that the gift is not intended to be interpreted to be a trust, sec. 72.04 (3), Stats., fails to exempt the present bequest because it extends reciprocity only to transferees in *"other* states, commonwealths, territories, or districts" and not to foreign nations. Tax-exemption statutes are not to be extended beyond the fair import of their terms. The use of the word "other" before "states," without any reference to countries or nations, read in the light of *Estate of Miller,* 239 Wis. 551, 556, 2 N. W. (2d) 256, precludes an interpretation including foreign nations. In the *Miller Case,* the words "state, territory, or district" in sec. 72.01 (9), also a reciprocity statute, were held not to include foreign countries. The addition of the word "commonwealth" in sec. 72.04 (3), enacted as sec. 72.04 (1m) by ch. 483, Laws of 1951, cannot be viewed as an inept attempt to include other nations. More likely its use is explained by the fact that Pennsylvania, Massachusetts, and Virginia style themselves commonwealths.

*2. No treaty prohibits taxation of the bequest.*

Pointing out that by virtue of art. VI of the constitution of the United States, ". . . all treaties made, . . . under the authority of the United States, shall be the supreme law of the land; . . ." respondent contends that certain treaties operate to forbid Wisconsin to tax the transfer to him.

(a) *Treaty with Germany signed December 8, 1923.*

This treaty was reinstated, as applicable to the present Federal Republic of Germany, by treaty signed June 3, 1953, and effective October 22, 1954, prior to the testator's death.

The county court based its decision in part on Article IV of the 1923 treaty, of which the pertinent provision relating to disposition of personal property [1] was as follows:

"Nationals of either High Contracting Party may have full power to dispose of their personal property of every kind *within the territories of the other,* by testament, donation, or otherwise, and their heirs, legatees, and donees, of whatsoever nationality, whether resident or nonresident, shall succeed to such personal property, and may take possession thereof, either by themselves or by others acting for them, and retain or dispose of the same at their pleasure subject to the payment of such duties or charges only as the nationals of the High Contracting Party within whose territories such property may be or belong shall be liable to pay in like cases." (Italics supplied.)

That provision does not support the claim of exemption. In *Clark v. Allen,* 331 U. S. 503, 516, 67 Sup. Ct. 1431, 91 L. Ed. 1633, its meaning was considered and it was held "that Article IV of the treaty does not cover personalty located in this country and which an American citizen undertakes to leave to German nationals." While respondent disparages that interpretation we are bound by it. *Clark v. Allen* denied the application of the treaty to the disposition of California personal property on death, under a California statute, but the above-quoted ruling is equally applicable to negative treaty interference with the taxation of the present bequest by this state.

It is next contended that other provisions of the 1923 treaty entitled German nationals to national treatment and to unconditional most-favored-nation treatment with respect to inheritance-tax exemption; and that since the treaty was in effect when testator died on July 1, 1955, it entitled re-

---

[1] Here testator's estate was all personal property.

spondent to the benefit of the tax-exemption provisions of the treaty with Japan signed April 2, 1953, and in force October 30, 1953.

Article I of the 1923 treaty gave permission to the nationals of each party to enter, travel, and reside in the territories of the other, to do various specified things therein not here pertinent, "and generally to do anything incidental to or necessary for the enjoyment of any of the foregoing privileges upon the same terms as nationals of the state of residence or as nationals of the nation hereafter to be most favored by it, submitting themselves to all local laws and regulations duly established." It then proceeded as follows:

"The nationals of either High Contracting Party *within the territories of the other* shall not be subjected to the payment of any internal charges or taxes other or higher than those that are exacted of and paid by its nationals."

As we read them, these provisions merely give German nationals the right to carry on specified activities *in this country,* not including receipt and use of bequests, and while here to be free from taxes other or higher than those exacted of our own nationals.

Article VII of the 1923 treaty guaranteed most-favored-nation treatment with respect to navigation and to imports and exports and duties thereon. Article VIII was as follows:

"The nationals and merchandise of each High Contracting Party within the territories of the other shall receive the same treatment as nationals and merchandise of the country with regard to internal taxes, transit duties, charges in respect to warehousing and other facilities, and the amount of drawbacks and bounties."

Manifestly those provisions relate only to commercial goods and transactions, and are not sufficient to establish the claimed exemption from inheritance tax.

Respondent contends that certain statements of Secretary Hughes in recommending the 1923 treaty to the president and senate disclosed a purpose to give a broad reciprocity which should be extended to such matters as inheritance taxes. A reading of those documents shows, however, that the secretary was concerned with promotion of international trade. Thus he considered the adoption of the unconditional favored-nation policy as "the simpler way to maintain our tariff policy" and thereby to extend our trade abroad, and he referred to "the interest of the trade of the United States, in competing with the trade of other countries," and to the theories on which "privileges and concessions in the field of duties on imports or exports should be granted." 5 Hackworth, Digest of International Law, pp. 271, 273. We find nothing in the messages referred to which would warrant a broad construction of the treaty beyond the ordinary meaning of its terms, in the particular urged by respondent.

(b) *Treaty with Japan.*

If we are wrong in our interpretation of the most-favored-nation provisions of the 1923 treaty with Germany, and if such provisions are to be construed as granting most-favored-nation treatment to German nationals resident in Germany with respect to inheritance taxes on gifts by American testators, then it is material to examine the treaty with Japan dated April 2, 1953, and in force October 30, 1953, to see whether it establishes reciprocity with respect to exemption from inheritance taxes.

Nothing of the kind appears in the Japanese treaty. The material parts of Article XI, relied on by appellant, are as follows:

"2. With respect to nationals of either Party who are neither resident nor engaged in trade or other gainful pursuit within the territories of the other Party, . . . it shall be the

*aim* of such other Party *to apply in general* the principle set forth in paragraph 1 of the present Article."

Paragraph 1 in turn provides that nationals of either party residing or engaged in gainful or philanthropic activities within the territory of the other party shall not be subject to the payment of taxes on "income, capital, transactions, activities, or any other object, . . . within the territories of such other party, *more burdensome than those borne in like situations by nationals* and companies *of such other party.*"

If this applies to inheritance taxes at all, it appears to mean only that the United States shall aim to apply in general the principle that Japanese nationals not resident nor engaged in business here shall not be subject to payment of inheritance taxes "more burdensome than those borne in like situations by nationals" of the United States. Doubtless any restriction thereby placed upon the United States operates upon the state of Wisconsin.

Assuming for present purposes that by virtue of the treaty with Germany, Dr. Heuss is entitled to as favorable treatment with respect to inheritance taxation as a national of Japan, and disregarding the precatory tone of the words "it shall be the aim . . . to apply in general," we may conclude that at most the bequest to him is exempt by virtue of the treaties only if it would be exempt were he a resident of Wisconsin and directed by the will to use the money in Wisconsin.

Even if such were the case, however, the bequest would not be exempt. Sec. 72.04 (1), Stats., would apply. That subsection exempts transfers to individuals residing in this state only where they take *"as trustees, in trust* exclusively for . . . charitable, . . . purposes in this state."

In the instant case the will specifically provides: "It is not intended that this gift and bequest shall be interpreted to be a trust." Thus by its own terms the gift excludes the possibility of exemption.

We are not persuaded by the argument that the will discloses an intention to create a trust, or the equivalent of a trust, within the meaning of sec. 72.04 (1), Stats. It expressly says that it is not intended to be interpreted as a trust. One seeking exemption must bring himself within the terms of the exemption statute, and exemptions are to be strictly construed. A precatory expression of the charitable purpose is not to be construed as a trust in the face of the statement that it is not intended to be a trust, simply so that an exemption may be obtained. Here the testator apparently sought to avoid the creation of a trust, perhaps because he was advised that trusts are not recognized in German law. By way of assurance that the money would be used for the prescribed purpose, he appears to have relied instead on the official position of the legatee, as president of the Federal Republic of Germany, and in addition he concluded article Fourth of his will with an express direction to his executor and attorney "to satisfy themselves to a reasonable degree of certainty that my will and intention will be executed."

(c) *Treaty with Germany signed October 29, 1954.*

This treaty was signed October 29, 1954, and ratifications were exchanged on June 14, 1956. It provides in sec. 2 of Article XXIX that it shall enter into force one month after the day of exchange of ratifications.

Respondent asserts that notwithstanding the effective date specified therein, under international law the treaty became binding upon the contracting governments on date of signature, October 29, 1954, and hence was binding on the state of Wisconsin at the time of testator's death on July 1, 1955;

and that it operates to require Wisconsin to extend to the gift to Dr. Heuss the same exemption which German law would grant to a testamentary gift by a German resident to a resident of Wisconsin for comparable purposes. Reference is made to Articles III, XI, and XXV of the treaty.

An examination of those Articles fails to satisfy us that such exemption is thereby established. Therefore we need not resolve the controversy as to when the treaty became effective to bind the state of Wisconsin.

Article III provides that nationals of one party shall be free from molestation and shall receive protection and security in the territories of the other party, and shall be accorded no-less-favorable treatment "for the protection and security of their persons and their rights" than is accorded nationals of the other party or of any other country. We cannot construe this Article to include tax exemption.

Article XXV defines "national treatment" and "most-favored-nation treatment" as used elsewhere in the treaty.

Article XI relates to taxation. The first four sections are identical in all material respects with the provisions of Article XI of the Japanese treaty which we have analyzed above. They are insufficient to establish the right to the exemption claimed in the present case, for the reasons stated under the previous heading.

By section 5 of Article XI, each party to the treaty reserves the right to

". . . apply special provisions in allowing, to nonresidents, exemptions of a personal nature in connection with income and inheritance taxes."

It is unnecessary to decide what that means, for clearly it does not establish mandatory reciprocity.

Where it is sought to read into treaties an implied prohibition against taxation by the states, the following comment is pertinent:

"It is, of course, true that even treaties with foreign nations will be carefully construed so as not to derogate from the authority and jurisdiction of the states of this nation unless clearly necessary to effectuate the national policy." *United States v. Pink,* 315 U. S. 203, 230, 62 Sup. Ct. 552, 86 L. Ed. 796.

It may be observed in conclusion that even if the treaty in effect on the date of testator's death were to be construed as establishing a rule of reciprocity under which Wisconsin would have to exempt a bequest to a German national and resident if Germany would exempt a comparable bequest in the reverse situation, respondent's case for exemption would still be very doubtful. While it appears that the Federal Republic of Germany would not tax a transfer from a testator residing in that country to a person residing in the United States, made under the condition that it must be used solely for charitable purposes, the statement of the German secretary of the treasury which appears in the record is careful to add "if such use is assured." Presumably this means that there must be some assurance enforceable by legal process, that the money will be used for the purpose specified by the testator. Therefore the assumed reciprocity would extend only to a case where the charitable use, on which the Wisconsin resident's bequest to a resident of Germany is conditioned, can be enforced in Germany by some legal means.

The trial court found, and it appears to be conceded, that the trust device as we know it is not available in Germany. The record is barren of any showing that any other judicial or administrative process would be available to control the disbursement of the funds by the recipient in that country, and none is called to our attention by counsel. We are not prepared to take judicial notice of the German laws. In pointing out this feature of the case we do not mean to suggest any doubt that the eminent legatee will properly use the

bequest for the specified purpose. We have every confidence that he, and if the occasion arises his successor in office, will disburse the funds with the most scrupulous fidelity to the wishes of the testator. Where, however, tax exemption is conditioned on legal assurance that restrictions will be complied with, moral certainty alone is not enough.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings consistent with this opinion.

MARTIN, C. J., and BROWN, J., took no part.