

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

January 31, 1963

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Opinion No. C-8

Re: Whether intangible prop-
erty belonging to a
nonresident alien but
located in Texas is
subject to inheritance
taxes upon the nonresi-
dent's death.

Dear Mr. Calvert:

You have submitted the following request for an opinion of this office.

"Eloy S. Vallina was a non-resident alien who died testate a resident of the Ciudad of Chihuahua, Chihuahua, Mexico. The decedent during his lifetime had rented a safety deposit box from the El Paso National Bank of El Paso, Texas, and besides a checking account in said bank, the following described property was found in said box:

| | |
|---|---:|
| Checking Account - El Paso National Bank, El Paso, Texas | $ 13,867.81 |
| 1608 Shares El Paso National Bank, El Paso, Texas | 96,480.00 |
| 892 Shares El Paso National Bank, El Paso, Texas | 53,520.00 |
| 600 Shares Northgate National Bank, El Paso, Texas | 28,740.00 |
| Receipt #110 - 3% El Paso National Bank Savings Certificate | 50,000.00 |
| Certificate #319 - 3% Savings Certificate of El Paso National Bank | 75,000.00 |
| | $317,607.81 |

"Please advise whether or not the above described property is subject to the inheritance tax as provided in Chapters 14 and 15 of Title 122A, Taxation General."

It is well settled that the money on deposit, the shares of stock, and the savings certificates constitute intangible

-28-

personal property.[1]  We will first consider whether there has
been a taxable transfer under the provisions of Chapter 14.

The pertinent provisions of Article 14.01 of Chapter 14,
Title 122A, 20A, Taxation-General, Vernon's Annotated Texas
Statutes, are the following:

> "All property within the jurisdiction
> of this State, real or personal, corpor-
> ate or incorporate, and any interest there-
> in, . . . whether belonging to inhabitants
> of this State or to persons who are not
> inhabitants, . . . which shall pass absolutely
> or in trust by will . . . shall, upon pass-
> ing . . . be subject to a tax . . . in ac-
> cordance with the following classifications;
> provided, however, that the tax imposed by
> this Chapter in respect to personal property
> of non-residents (other than tangible prop-
> erty having an actual situs in this State)
> shall not be payable; (1) if the grantor/or
> donor at the time of his death was a resi-
> dent of a state or territory of the United
> States which, at the time of his death,
> did not impose a transfer or inheritance
> tax of any character in respect of personal
> property of residents of this State (other
> than tangible personal property having an
> actual situs in said State); or, (2) if
> the laws of the State or territory of the
> residence of the grantor or donor at the
> time of his death, contained a reciprocal
> provision under which nonresidents were
> exempted from transfer or inheritance
> taxes of every character in respect to
> personal property (other than tangible
> personal property having an actual situs
> therein) provided the State or territory of
> residence of such non-residents allowed

---

[1] 33 Tex.Jur. 936, Property, Sec. 3 and authorities cited therein.

". . . Intangibles, consisting of rights not
related to physical things, are merely relations
between persons, natural or corporate, which the
law recognizes by attaching to them certain sanc-
tions enforceable in the courts. . . ."  42 Am.Jur.
194, Property, Sec. 11.

> a similar exemption to residents of the
> State or territory of residence of such
> a grantor or donor.  For the purpose of
> this Chapter the District of Columbia
> and possessions of the United States
> shall be considered territories of the
> United States.  Provided further that
> the provisions of this Chapter shall
> not apply to residents of those states
> which have no inheritance tax law. . . ."

Since May 29, 1939, when the United States Supreme Court abandoned its single death tax theory, which had limited the right to tax intangibles to the decedent's domiciliary state (except where such intangibles had acquired a permanent situs elsewhere),[2] the law has been settled that more than one state may impose a death tax measured by some or all of the tax-payer's intangibles if said intangibles were to some extent protected and benefited by the laws of the state imposing the tax.[3]  In effect, the tax is regarded as the quid pro quo for such protection.

In view of the United States Supreme Court cases which have re-established the right of states to impose death taxes on the transfer of intangibles of nonresidents, there would seem to be no doubt about the right of this State to impose an inheritance tax upon the receipt of intangibles located within this State but owned by a nonresident of the United States provided such intangibles were afforded protection by

---

[2] Farmers' Loan & Trust Co. v. Minnesota, 50 S.Ct. 98, 280 U.S. 204 (1930); Baldwin v. Missouri, 50 S.Ct. 436, 281 U.S. 586 (1930); Beidler v. South Carolina Tax Commission, 51 S.Ct. 54, 282 U.S. 1 (1930); First National Bank of Boston v. Mann, 52 S.Ct. 174, 284 U.S. 312.

[3] Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900 (1939); Graves v. Elliott, 307 U.S. 383, 59 S.Ct. 913 (1939); Graves v. Schmidlapp, 315 U.S. 657, 62 S.Ct. 870 (1942); State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008 (1942).

the laws of this State.[4]  It is evident that this proviso is satisfied in the instant case.

Having determined that an inheritance tax might constitutionally be imposed under Article 14.01, we pass to a consideration of whether the reciprocal exemption provisions for intangibles belonging to nonresidents covers not only nonresidents of the States and territories of the United States but also nonresidents of the United States.  The statute itself specifically limits the reciprocal exemption provisions to residents ". . . of a state or territory of the United States" under specifically stated conditions, and further specifically provides that ". . . the provisions of this Chapter shall not apply to residents of those states which have no inheritance tax law. . . ." (Emphasis supplied).  We think that the plain language of the statute precludes its applicability to nonresidents of the United States or of a territory of the United States.  Ordinarily, the word "state" is not construed as including a foreign state or country.[5]

In the instant case, we are not presented with any problem of discrimination in taxation against residents of foreign countries which might be prohibited by a treaty between the United States and Mexico providing that no such discrimination should be made.  We have, therefore, not found it necessary to ascertain whether this government and the Government of Mexico have entered into any treaty agreement with regard to

---

[4] Even prior to 1939, the United States Supreme Court had held that the Federal Government had the power to tax securities belonging to a nonresident alien when such securities were physically present in the United States at the time of the death of the decedent.  Burnet v. Brooks, 53 S.Ct. 457, 288 U.S. 378 (1933).  Applying the reasoning of the Burnet decision the following cases upheld the rights of the states involved to collect an inheritance tax on the transfer of intangibles belonging to nonresidents of the United States.  Estate of McCreery, 220 Cal. 26, 29 P.2d 186 (1934); In re Lloyd's Estate, 185 Wash. 61, 52 P.2d 1269 (1936).

[5] Eidman v. Martinez, 22 S.Ct. 515, 184 U.S. 578 (1902).  In re Miller's Estate, 239 Wis. 551, 2 N.W.2d 256 (1942), holds that the Wisconsin statutory provision exempting the transfer of nonresident decedent's intangible personal property from inheritance taxes, if like exemption is given Wisconsin residents by the laws of the state, territory or district of such nonresidents, did not apply to property of nonresident aliens since the purpose of the statute was to meet the domestic problem of multiple taxation by the various states.

death taxes.[6]  You are therefore advised that the intangible property described in your request is subject to the inheritance tax levied by Article 14.01.

We will next consider whether any tax will accrue under the provisions of Chapter 15. Although this Chapter is entitled "Additional Inheritance Tax", it is in essence an estate tax.[7]

Article 15.01 levies a tax upon the entire net value of the taxable estate of a decedent situated and taxable within the State, the tax to be equal to the difference between the sum of the inheritance taxes due the State and "eighty per cent (80%) of the total sum of the estate and transfer taxes imposed on such estate by the United States Government under the Revenue Act of 1926, by reason of the property of such estate which is situated in this State and taxable under the laws of this State."

Article 15.04 levies a tax in the full amount of the allowable 80% credit where no State Inheritance taxes were due by reason of exemptions.[8]

Thus the amount of the tax is a fixed percentage of an amount which must necessarily first be determined under the provisions of the Federal estate tax statutes. In State v. Wiess, 141 Tex. 303, 171 S.W.2d 848 (1943), the court held that the terms "net estate" and "gross estate" as used in Article 7144a[9] must be given the same meaning as they are given in the Federal Act in order to take full advantage of the Federal credit provision.

---

[6] In Nielson, Admr. v. Johnson, Treasurer, 49 S.Ct. 223, 279 U.S. 47 (1929), the court held that a treaty between the United States and a foreign government prevented discrimination in taxation against the resident of the foreign government.

[7] Strauss v. Calvert, 246 S.W.2d 287 (Tex.Civ.App. 1952, error ref., n.r.e.); Sinnott v. Gidney, 159 Tex. 366, 322 S.W.2d 507 (1959) (Holding on this point limited to Section 4 of Article 7144a, presently carried as Article 15.04).

[8] The 1954 Code reaches this result by providing that the basic estate tax and the estate tax imposed by the Revenue Act of 1926 shall be 125% of the maximum credit allowed against the Federal estate tax for state death taxes paid. I.R.C., 1954, § 2011(d), 26 U.S.C., § 2011(d).

[9] Controlling sections of Article 7144a now carried in Articles 15.01 and 15.05.

In view of the holding in the <u>Wiess</u> case, the determination by the Federal Government of whether the intangibles under consideration are included in the decedent's gross estate will necessarily determine whether any tax can arise under the provisions of Chapter 15.

## S U M M A R Y

Intangible personal property located in Texas and owned by a nonresident alien is, upon the nonresident alien's death, subject to an inheritance tax under the provisions of Chapter 14, Title 122A, 20A, Taxation-General, V.A.T.S. The determination by the Federal Government of whether the intangible personal property under consideration is included in the decedent's gross estate will necessarily determine whether any tax can arise under the provisions of Chapter 15, Title 122A, 20A, Tax.-Gen., V.A.T.S.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By: /Marietta McGregor Payne
Marietta McGregor Payne
Assistant Attorney General

MMP/jp

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

Frank Booth
Arthur Sandlin
F. C. Jack Goodman

APPROVED FOR THE ATTORNEY GENERAL
By: Stanton Stone

DATE: March 13, 1963.

TO: Stanton Stone.

FROM: W. V. Geppert.

SUBJECT: Opinion No. C-8.

The Inheritance Tax Act, as enacted in 1923, read as follows:

"All property within the jurisdiction of this State, real or personal, corporate or incorporate, and any interest therein, whether belonging to inhabitants of this State or to persons who are not inhabitants, regardless of whether property is located within or without the State, which shall pass absolutely or in trust by will or by the laws of descent or distribution of this or any other State, or by deed, grant, sale or gift made or intended to take effect in possession or enjoyment after the death of the grantor or donor, shall upon passing to or for the use of any person, corporation or association be subject to a tax for the benefit of the State's general revenue fund in accordance with the following classifications." (Emphasis supplied throughout.)

The Inheritance Tax Act was next amended in 1929 to read as follows:

"All property within the jurisdiction of this State, real or personal, corporate or incorporate, and any interest therein, whether belonging to inhabitants of this State or to persons who are not inhabitants, regardless of whether property is located within or without this State, which shall pass absolutely or in trust by will or by the laws of descent or distribution of this or any other State, or by deed, grant, sale or gift made or intended to take effect in possession or enjoyment after the death of the grantor or donor, shall upon

passing to or for the use of any person, corporation or association, be subject to a tax for the benefit of the State's general revenue fund in accordance with the following classifications: Provided, however, that the tax imposed by this Article in respect to personal property of non-residents (other than tangible property having an actual situs in this State) shall not be payable: (1) if the grantor or donor at the time of his death was a resident of a State or territory of the United States or of a foreign country, which, at the time of his death, did not impose a transfer or inheritance tax of any character in respect of personal property of residents of this State (other than tangible personal property having an actual situs in said State); or, (2) if the laws of the State or territory or foreign country of the residence of the grantor or donor at the time of his death, contained a reciprocal provision under which non-residents were exempted from transfer or inheritance taxes of every character in respect to personal property (other than tangible personal property having an actual situs therein) provided the State or territory or foreign country of residence of such non-residents allowed a similar exemption to residents of the State or territory or foreign country of residence of such a grantor or donor. For the purpose of this Article the District of Columbia and possessions of the United States shall be considered territories of the United States, and Provinces of the Dominion of Canada shall be considered foreign countries. Provided further that the provisions of this Act shall not apply to residents of those states which have no inheritance tax law."

The Statute was next amended in 1939 to read as follows:

"All property within the jurisdiction of this State, real or personal, corporate or incorporate, and any interest therein, including property passing under a general power of appointment exercised by the decedent by will, including the proceeds of life insurance to the extent of the amount receivable by the executor or administrator as insurance under policies taken out by the decedent upon his own life, and to the extent of the excess over Forty Thousand Dollars ($40,000) of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life, whether belonging to inhabitants of this

-2-

State or to persons who are not inhabitants, regardless of whether such property is located within or without this State, which shall pass absolutely or in trust by will or by the laws of descent or distribution of this or any other state, or by deed, grant, sale, or gift made or intended to take effect in possession or enjoyment after the death of the grantor or donor, or association, be subject to a tax for the benefit of the State's General Revenue Fund, in accordance with the following classification. . . ."

The Statute was next amended in 1945 to read as follows:

"All property within the jurisdiction of this State, real or personal, corporate or incorporate, and any interest therein, including property passing under a general power of appointment exercised by the decedent by will, including the proceeds of life insurance to the extent of the amount receivable by the executor or administrator as insurance under policies taken out by the decedent upon his own life, and to the extent of the excess over Forty Thousand Dollars ($40,000) of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life, whether belonging to inhabitants of this State or to persons who are not inhabitants, regardless of whether such property is located within or without this State, which shall pass absolutely or in trust by will or by the laws of descent or distribution of this or any other State, or by deed, grant, sale, or gift made or intended to take effect in possession or enjoyment after the death of the grantor or donor, shall, upon passing to or for the use of any person, corporation, or association, be subject to a tax for the benefit of the State's General Revenue Fund, in accordance with the following classification: provided, however, that the tax imposed by this Article in respect to personal property of nonresidents (other than tangible property having an actual situs in this State) shall not be payable: (1) if the grantor or donor at the time of his death was a resident of a State or territory of the United States which, at the time of his death, did not impose a transfer or inheritance tax of any character in respect of personal property of residents of this State (other than tangible personal property having an actual situs in said State); or, (2) if the laws of the State or territory of the residence of the grantor or donor at the time of his death, contained a

reciprocal provision under which non-residents
were exempted from transfer or inheritance taxes
of every character in respect to personal proper-
ty (other than tangible personal property having
an actual situs therein) provided the State or
territory of residence of such non-residents al-
lowed a similar exemption to residents of the
State or territory of residence of such a grantor
or donor. For the purpose of this Article the
District of Columbia and possessions of the United
States shall be considered territories of the
United States. Provided further that the pro-
visions of this Act shall not apply to residents
of those states which have no inheritance tax law."

The Statute was again amended in 1959 when adopted as
Article 14.01, Chapter 14, in a New Title of the Revised Civil
Statutes to be known as "Title 122A, Taxation - General". Sec.
1. Title 122A. The 1945 Act was brought forward in the new
title, without any changes, except the word "Article" and the
word "Act" were both changed to "Chapter" so that it would con-
form to the New Title.

Section 3 of the New Title 122A reads as follows:

"With respect to the provisions of this Act
which tax transactions subject to taxation by
the State prior to the effective date of this
Act, this Act shall be considered to be the
equivalent of a revision by amendment even
though it is in the form of an enactment of
new law and repeal of the old law. This Act
shall be construed to make a substantive change
in the prior law only where the language of
this Act manifests a clear intent to make such
a change."

I have set out the pertinent provisions of our inheritance
tax statutes as enacted in 1923 and as amended in 1929, 1939, 1945
and 1959 for the purpose of showing the history of our inheritance
tax statutes and the uniform and consistent departmental con-
struction placed on the 1923 Act and its amendments by the Comp-
troller of Public Accounts, who is acharged with the enforcement
and collection of inheritances taxes, and for the purpose of
showing the construction placed upon the original act by the
Lesiglature itself in the 1929 amendment and the 1945 Amendment.

I call your attention to the fact that the 1923 Act and
all of the amendments contain the following language:

"All property within the jurisdiction of
this State, real or personal, corporate or in-
corporate, and any interest therein, whether

-4-

> belonging to inhabitants of this State or to
> persons who are not inhabitants, regardless
> of whether property is located within or with-
> out this state, which shall pass absolutely or
> in trust by will or by the laws of descent or
> distribution of this or any other State."

Upon the passage of the Inheritance Tax Act in 1923, the Comptroller of Public Accounts construed the above quoted language and the phrase "of this or any other state" to mean and include inhabitants of foreign counties. This construction was not questioned by anyone, and from 1923 until the time of the 1929 amendment, all property, both real and personal, tangible and intangible, belonging to inhabitants of foreign countries but within the jurisdiction of this State, was, upon the death of the nonresident aliens, subject to inheritance taxes.

The Supreme Court of Texas in speaking of departmental construction has stated:

> "This long-continued administrative con-
> struction is entitled to great weight, especially
> in view of the fact that the statute was amended
> as late as 1943 and the Legislature, which is pre-
> sumed to have been aware of the interpretation,
> made no changes in the language that would indi-
> cate a contrary intent." Burroughs v. Lyles, 181
> S.W.2d 570 (1944).

The court in Crane v. Mann, 162 S.W.2d 117 (Tex.Civ.App. 1942 error ref.) with reference to departmental construction of this same inheritance tax statute stated:

> "Moreover, the State Comptroller has acted
> in accord with it for a number of years in
> collecting inheritance taxes. The parties have
> incorporated in the record by agreement several
> opinions of the Attorney General which show since
> the year 1929 that department has construed the
> Inheritance Tax Statute to place the tax on the
> entire estate passing by virtue of the will re-
> gardless of any compromise agreement which per-
> mits a portion of the estate to go to a contestant.
> That departmental construction having been acqui-
> esced in by the Legislature of Texas for more than
> 12 years is of itself persuasive and should not be
> overturned in the absence of strong reason there-
> for."

When the Legislature in 1929 amended the Inheritance Tax Statute it is presumed to have been aware of the interpretation placed thereon by the Comptroller and in the 1929 Amendment made no changes in the language that would indicate contrary intent.

-5-

In fact, it added the following proviso which clearly reflects that it was either aware of the departmental construction or placed the same construction upon the Act itself by adding the following:

"Provided, however, that the tax imposed by this Article in respect to personal property of non-residents (other than tangible property having an actual situs in this State) shall not be payable: (1) if the grantor or donor at the time of his death was a resident of a State or territory of the United States _or of a foreign country_ which at the time of his death did not impose a transfer or inheritance tax of any character in respect of personal property of residents of this State (other than tangible personal property having an actual situs in said State); or, (2) if the laws of the State or territory _or foreign country_ of the residence of the grantor or donor at the time of his death, contained a reciprocal provision under which non-residents were exempted from transfer or inheritance taxes of every character in respect to personal property (other than tangible personal property having an actual situs therein) provided the State or territory _or foreign country_ of residence of such non-residents allowed a similar exemption to residents of the State or territory _or foreign country_ of residence of such a grantor or donor."

If the Legislature itself had not interpreted the phrase "of this or any other state" as including foreign countries it would not have added the above proviso exempting residents of a foreign country from paying the inheritance tax on intangible property in the event the foreign country did not impose a transfer or inheritance tax in respect to personal property of residents of this State (other than tangible personal property having an actual situs in said state) and would not have provided that if the foreign country contained a reciprocal provision as to intangible property that they would not have to pay the inheritance tax on intangibles within the jurisdiction of this state. It would have been a vain, useless and nonsensical proviso. For example, if the Legislature would pass an act providing that the provisions thereof would only apply to counties containing a population of 200,000 or more according to the last preceding Federal Census it would certainly not then add a proviso to the effect that the provisions of the Act would not apply to counties containing a population of 20,000 or under. During the period of time from the 1929 Amendment to the 1939 Amendment, the Comptroller, in enforcing and collecting inheritance taxes, ruled that all property, both real and personal, tangible and intangible, belonging to inhabitants of foreign countries, but

-6-

within the jurisdiction of this State, was, upon the death of the aliens, subject to inheritance taxes, except in those instances in which the aliens resided in "a foreign country, which, at the time of death, did not impose a transfer or inheritance tax of any character in respect of personal property of residents of this State (other than tangible personal property having an actual situs in said State); or if the laws of the foreign country of the residence of the grantor or donor at the time of his death, contained a reciprocal provision under which non-residents were exempted from transfer or inheritance taxes of every character in respect to personal property (other than tangible personal property having an actual situs therein) provided the .... foreign country of residence of such non-residents allowed a similar exemption to residents of the State or territory of residence of such a grantor or donor." This construction was consistent and uniform up until the time of the 1939 Amendment and was not questioned by any taxpayer.

The Legislature in its amendment in 1939 omitted the provisions as to the exemptions of intangible personal property as well as the reciprocal provisions. From the time of this 1939 Amendment until it was next amended in 1945 the inhabitants of foreign countries as well as the inhabitants of any state or territory of the United States paid the inheritance tax upon all their property within the jurisdiction of this State both real and personal, whether tangible or intangible.

In 1945 the Legislature amended this statute and made it identical with the provisions of the 1929 Amendment except in the following respects: (1) The Act of 1929 exempted intangible personal property of a non-resident who was a resident of a state or territory of the United States "or of a foreign country" which did not impose an inheritance tax in respect to intangible personal property. The 1945 Act omitted the phrase "or of a foreign country." (2) The Act of 1929 also provided that the provinces of the Dominion of Canada were to be considered foreign countries. The 1945 Act omitted this provision. (3) The Amendatory Act of 1939 added the provision for inclusion of life insurance proceeds. (4) The Amendatory Act of 1945 restored the provisos containing the reciprocity provisions as enacted in 1929 but omitted therefrom reference to <u>foreign countries</u>.

The amendment in 1959 is in the identical language as used in the 1945 Act except the 1959 Amendment in one place changed the word "Article" to "Chapter" and in another place in the Act changed the word "Act" to the word "Chapter" to conform with the New Title 122A, Taxation - General. From the time this Act was amended in 1945, which restored the provisions containing the reciprocity provisions but omitted therefrom the reference to foreign countries as contained in the 1929 Act, it has been the uniform and consistent departmental construction by the Comptroller that all property whether real or personal, tangible or intangible, within the jurisdiction of this State

belonging to inhabitants of foreign countries was subject upon the passing upon the non-residents' death to the inheritance tax. This construction has not been questioned by any taxpayer and the taxes on intangibles have been paid by inhabitants of such foreign countries until it was questioned by the executor of the Estate of Elloy S. Vallina which was the occasion of our Opinion No. C-8. Upon the release of this opinion the executor of the Vallina Estate paid the inheritance tax upon the intangibles and same has been paid into the State Treasury.

The Legislature in 1929 first added the following proviso: "provided further that the provisions of this Act shall not apply to residents of those states which have no inheritance tax laws." This proviso followed the provisos containing the reciprocity provisions as to residents "of a state or territory of the United States or of a foreign country." It was the uniform departmental construction of the Comptroller that the proviso quoted above which stated that the act shall not apply to residents of those states which have no inheritance tax laws had reference only to a state or territory of the United States and served to accord complete exemption as to all property owned by non-resident decedents the state of whose residence did not levy any inheritance tax. It did not apply to or cover "foreign countries". This proviso, as well as the reciprocity provisions, was omitted from the 1939 Act, but was again inserted in the 1945 Act and the 1959 Amendment, and was given the same construction by the Comptroller as was given the provision as contained in the 1929 Act. We have previously quoted in full the provision of Sec. 3 of the 1959 Act, which expressly provided that the Act shall be considered to be the equivalent of a revision by amendment, even though it is in the form of an enactment of a new law and repeal of the old law. We requote this express statement:

"....This Act shall be construed to make a substantive change in the prior law only when the language of this Act manifests a clear intent to make such a change."

The Legislature is presumed to have known of the construction given by the Comptroller to the 1929 and the 1945 Acts, and has acquiesced in such construction for a period of fourteen years. The 1959 Amendment made no change in the provisions of the 1945 Act.

The holding in our Opinion C-8 is in harmony with this departmental construction and is in harmony with the holding in Attorney General's Opinion No. O-6122 (1944), a copy of which is attached to this memorandum. As stated by our courts, this departmental construction is entitled to great weight. It has been consistent and uniform and has been acquiesced in by the Legislature for a long period of time and as stated in the Crane case, supra, such departmental construction "should not be overturned in the absence of strong reason therefor".

I am convinced that our opinion C-8 is legally sound.