90 Cal.App.3d 885 (1979)
153 Cal. Rptr. 566
Estate of CLAIRE M. MEARS, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant,
v.
ALFRED L. BROWN, Objector and Respondent.
Docket No. 43653.
Court of Appeals of California, First District, Division Two.
March 23, 1979.
*887 COUNSEL
Myron Siedorf, Edwin Rosenthal and William P. Seeley for Petitioner and Appellant.
Garrison, Townsend & Hall, H. Stanton Orser, Goldsmith, Siegel, Engel & Littlefield and Gerson F. Goldsmith for Objector and Respondent.
OPINION
ROUSE, J.
The principal question presented by this appeal is whether section 13851 of the Revenue and Taxation Code is constitutional.[1] That *888 section provides for an unconditional exemption from inheritance taxation for intangible personal property owned by residents of the United States living outside of California. The exemption is extended to residents of foreign countries only on condition that the country of residence (1) impose a like tax, and (2) exempt residents of California from such tax. (1a) The question set before us for resolution is whether section 13851 denies nonresidents of the United States equal protection of the law because such nonresidents are governed by a different inheritance tax exemption than United States residents living outside of California. We hold that it does not.
Decedent Claire M. Mears died testate in 1974, a resident of Mexico and citizen of the United States. At the time of her death, Mexico imposed no inheritance tax on intangibles owned by residents or nonresidents.[2] She left to Alfred L. Brown, objector and respondent in this case, and to others, the corpora of two revocable trusts held in California. The corpora of the trusts consisted of shares of stock in various corporations, government bonds and notes, and a bank account. The inheritance tax referee reported the clear market value of the trusts at $877,578. Because Mexico imposed no inheritance tax on property of this nature, the referee reported a total California inheritance tax due of $119,479, in accordance with the provisions of section 13851.
Brown filed objections to the referee's findings, contending, inter alia, that subjecting the intangible personalty of a deceased, nonresident citizen of the United States to an inheritance tax while unconditionally exempting from such a tax the same property of a deceased resident of another state of the United States, constituted an unreasonable and arbitrary classification, and thereby denied him equal protection of the law. The probate court ruled in Brown's favor, finding the statute unconstitutional and declaring that no inheritance tax was due from the estate. The court also determined that section 13303, subdivision (b), of the Revenue and Taxation Code, exempts, from such taxation, securities of corporations doing business outside of California held in the trust accounts.
*889 Kenneth Cory, Controller of the State of California, appeals from this judgment. He contends, first, that the classifications made by section 13851 of the Revenue and Taxation Code are not arbitrary or unreasonable, and are therefore constitutional.[3] Appellant questions whether the proper rule for determining the existence of equal protection was applied by the trial court in arriving at its decision.
(2) In ordinary equal protection cases not involving suspect classifications (e.g., one based upon race) or the alleged infringement of a fundamental interest (such as the right to vote or to pursue a lawful occupation), a state statutory classification will be upheld if it bears a rational relationship to a legitimate state purpose. (Weber v. City Council (1973) 9 Cal.3d 950, 958-959 [109 Cal. Rptr. 553, 513 P.2d 601].) Legislative classifications drawn in a taxing scheme are subject to the "ordinary-traditional" test of equal protection. (Helton v. City of Long Beach (1976) 55 Cal. App.3d 840, 844 [127 Cal. Rptr. 737].) The legislative determination as to what is a sufficient distinction to warrant a classification will not be overthrown unless it is palpably arbitrary. (Henry's Restaurants of Pomona, Inc. v. State Bd. of Equalization (1973) 30 Cal. App.3d 1009, 1017 [106 Cal. Rptr. 867].) In City of San Jose v. Donohue (1975) 51 Cal. App.3d 40, 45 [123 Cal. Rptr. 804], this court held that a tax statute or ordinance which distinguishes between parties does not violate the equal protection or due process clause if the distinction rests upon a rational basis, and it must be presumed to rest upon that basis if there is any conceivable state of facts which would support it.
Section 13851 is derived from the Inheritance Tax Act of 1935. (Stats. 1935, ch. 358, § 6, p. 1273.) It was amended several times before being conformed to the Uniform Reciprocal Transfer Tax Act in 1943. (Stats. 1943, ch. 658, § 1, p. 2307.) In 1965, the statute was amended to grant to residents of the United States living outside of California an exemption from California's inheritance tax on intangibles located within its jurisdiction. (Stats. 1965, ch. 1181, § 1, p. 2989.) Such exemption existed whether or not the other state imposed a tax similar to California's or granted any exemption to such a tax. Nonresidents of the United States remained subject to the conditional exemption granted in 1943.
*890 (1b) It is apparent that by adopting section 13851 in its present form, the Legislature has evidenced an intent to avoid double taxation, but not taxation by a single jurisdiction. Such an objective is reasonable; it is equitable that a decedent's estate, while eluding the burden of double taxation, should be subject to the tax of at least one jurisdiction. Although the pre-1965 statute served this purpose with respect to both residents and nonresidents of the United States, we conclude that the statute does not now lack a rational basis because it unconditionally exempts only residents of the other states from the tax. Such exemptions are enacted "to meet a domestic problem, a question frequently arising between neighboring states, and one appealing to a sense of fairness. And this state might or might not extend the exemption. Having extended it and included within its scope all that is necessary to satisfy the domestic condition intended to be dealt with the classification in question is germane to its purpose and proper under the constitutional provisions cited." (In re Miller's Estate (1942) 239 Wis. 551 [2 N.W.2d 256, 259, 139 A.L.R. 1056].) In a case involving a statute and situations similar to those present in this appeal, the Supreme Judicial Court of Massachusetts pointed out that the state may have refrained from any attempt to collect a tax "on the transfer of intangibles of deceased residents of other States in the hope that other States would reciprocate and refrain from similarly taxing intangibles of Massachusetts decedents.... Similar `comity' with foreign countries has no meaning when dealing with [the sharing of tax revenues]." (Frost v. Commissioner of Corporations & Taxation (1973) 363 Mass. 235 [293 N.E.2d 862, 873-874].)
Although the Massachusetts court was there dealing with its own state "pick-up" tax, the principle proclaimed is viable when applied to the statute which is here in question. The Legislature is given broad discretion in drawing classifications for taxation purposes. (Helton v. City of Long Beach, supra, 55 Cal. App.3d at p. 844.) It may have wished to further ease the domestic problem of double taxation of intangibles by levying no such tax on the residents of sister states. The interest of this state in exacting from property its proper share of the tax burden within the state outweighs any concern over the competing tax claims of a foreign government. And when there is no tax levied on the property by the foreign government, the interest of the state is even stronger to have the property "pay its way" for the protection it has received from California's laws.
Respondent maintains that the domestic problem of double taxation in this area is no longer a problem so nettlesome as to require the blanket *891 exemption granted to residents of the United States by the 1965 amendment. This is an arguable point. While the domestic problem of double taxation may lack its past intensity, there is every reason to assume that, in our current revenue-seeking environment, such exemption continues to alleviate the potential for double taxation on an on-going basis. Furthermore, because of the imperfect meshing of several states' reciprocal exemption statutes, some estates would be subject to double taxation unnecessarily. (Indiana Dept. of State Revenue v. Griffith's Estate (1959) 129 Ind. App. 278 [156 N.E.2d 395].) California avoids this result by granting its unconditional exemption.[4] It tends to maintain a state of healthy good will between the states which might quickly evaporate should California regress to its prereciprocity position.[5]
The rule announced by the United States Supreme Court in Maxwell v. Bugbee (1919) 250 U.S. 525 [63 L.Ed. 1124, 40 S.Ct. 2], lends further support to the statute as now enacted. There, the court held that "The question of equal protection must be decided as between resident and nonresident decedents as classes, rather than by the incidence of the tax upon the particular estates whose representatives are here complaining. Absolute equality is impracticable in taxation, and is not required by the equal protection clause. And inequalities that result not from hostile discrimination, but occasionally and incidentally in the application of a system that is not arbitrary in its classification, are not sufficient to defeat the law." (P. 543 [63 L.Ed. p. 1133].)
(3) The concept of equal protection of the laws means simply that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. (Weber v. City Council, supra, 9 Cal.3d at pp. 961-962 (citing People ex rel. Younger v. County of El Dorado (1971) 5 Cal.3d 480, 502 [96 Cal. Rptr. 553, 487 P.2d 1193]).)
(4) In establishing exemptions from the California inheritance tax, the Legislature is free to impose any conditions it chooses. (Estate of Wilson (1968) 265 Cal. App.2d 943, 947 [71 Cal. Rptr. 822].) The right to *892 make testamentary disposition of property is not an inherent right or a right of citizenship, nor is it even a right granted by the Constitution. It rests wholly upon the legislative will and is derived entirely from the statutes. (Estate of Burnison (1949) 33 Cal.2d 638, 639-640 [204 P.2d 330] (citing other cases).) (1c) Obviously, it is on the basis of such power that the state has the right to impose, or to exempt from imposition, an inheritance tax upon intangible property which is situated in this state at the time of decedent's death. In this instance our Legislature has created two categories of nonresidents for the purpose of taxing such property. The taxation of intangibles owned by a member of that group who is a resident of a sister state at the time of death is left entirely to the jurisdiction of that person's residence, whereas intangibles belonging to residents of foreign countries are subject to tax in California except in those cases where the law of the country of their residence provides for reciprocal exemption.
Here, respondent's situation with respect to the purpose of the statute is not similar to that of a resident of a sister state. California's taxation of the property of a decedent residing in a sister state and that of a decedent residing in Mexico need not be uniform. Clearly, residents of a foreign country constitute a class of persons which is separate and distinct from residents of a sister state. Under the provisions of the challenged statute, each member of either class who is similarly situated to other members of that same class receives like treatment. (Weber v. City Council, supra, 9 Cal.3d 950.)
Respondent urges us to follow Burge v. Marcum (Ky. 1965) 394 S.W.2d 908, a case decided by the Kentucky Court of Appeals. However, that case is factually distinguishable. There, a statute levying a 5 percent tax upon all shares of stock issued by Kentucky corporations owned by nonresidents of the United States was contested on equal protection grounds. The Kentucky court rightly struck down the tax as violative of equal protection, for no similar tax was levied upon the residents of Kentucky, or even of the United States. Here, unlike the Kentucky tax, the tax under examination is imposed upon residents of California and is not strictly aimed at nonresidents of the United States.
Respondent cites several California cases to illustrate the principle of equal burden in taxation to comply with equal protection. He overlooks the companion principle that the tax burden should fall equally upon members of the same class. (Roth Drug, Inc. v. Johnson (1936) 13 Cal. App.2d 720 [57 P.2d 1022].) Again, the cases cited are factually *893 distinguishable from the situation involved in the instant case: e.g., uniform treatment between spouses (Estate of Legatos (1969) 1 Cal. App.3d 657 [81 Cal. Rptr. 910]); a special tax on retired persons who occupy nonprofit retirement homes (John Tennant Memorial Homes, Inc. v. City of Pacific Grove (1972) 27 Cal. App.3d 372 [103 Cal. Rptr. 215]); a city tax on lodging rentals (Gowens v. City of Bakersfield (1960) 179 Cal. App.2d 282 [3 Cal. Rptr. 746]; Ladd v. State Bd. of Equalization (1973) 31 Cal. App.3d 35 [106 Cal. Rptr. 885]); and a tax placing a burden on interstate commerce (Montgomery Ward & Co. v. State Bd. of Equalization (1969) 272 Cal. App.2d 728 [78 Cal. Rptr. 373].)
We find that the partial exemption granted by section 13851 is not violative of the constitutional principle of equal protection.
Appellant also contends that the trial court erred in its finding that securities of corporations doing business outside of California held in the decedent's trust accounts are not taxable under section 13303, subdivision (b), of the Revenue and Taxation Code.[6] This contention is well taken. In a recently published opinion, the California Supreme Court overturned a similar finding made by the same trial judge in a previous case. (Estate of Banerjee (1978) 21 Cal.3d 527 [147 Cal. Rptr. 157, 580 P.2d 657].) We conclude, therefore, that the finding of the trial court on this point is erroneous and inconsistent with the decision in Banerjee. All intangibles held in the two trust accounts owned by decedent are subject to California inheritance tax. However, the statute specifically exempts from inheritance tax bank deposits held by the estate. Not exempted from the tax, however, is cash on hand held by the trustee for the estate. Such property is specifically included in the estate for taxation purposes by section 13303, and is not, as respondent argues, exempted by the decision of Banerjee.
*894 The judgment is reversed and the matter remanded to the trial court with directions to calculate the inheritance tax for the entirety of the two trust corpora, excluding from that calculation the trusts' bank deposits of $5,384.14.
Taylor, P.J., and Kane, J., concurred.
NOTES
[1] Section 13851 of the Revenue and Taxation Code reads as follows: "Intangible personal property is exempt from the tax imposed by this part if the decedent at the time of his death was a resident of a territory or another state of the United States. Such property is also exempt if the decedent at the time of his death was a resident of a foreign state or country which then imposed a legacy, succession, or death tax in respect to intangible personal property of its own residents, but either: [¶] (a) Did not impose a legacy, succession, or death tax of any character in respect to intangible personal property of residents of this state: or [¶] (b) Had in its laws a reciprocal provision under which intangible personal property of a nonresident was exempt from legacy, succession, or death taxes of every character if the territory or state of the United States or foreign state or country in which the nonresident resided allowed a similar exemption in respect to intangible personal property of residents of the foreign state or country of residence of the decedent."
[2] According to the Mexico Law Digest (7 Martindale-Hubbell Law Directory (110th ed. 1978) p. 3727), there was such a tax imposed at one time. The tax law was repealed on December 29, 1961, and no new tax was substituted.
[3] Both parties agree that there is no constitutional infirmity in a statute imposing either a tax based solely upon the situs of intangibles (Curry v. McCanless (1939) 307 U.S. 357 [83 L.Ed. 1339, 59 S.Ct. 900, 123 A.L.R. 162]) or a tax on intangibles situated in California owned by a nonresident of the United States (Estate of McCreery (1934) 220 Cal. 26 [29 P.2d 186]).
[4] A conference of tax commissioners in 1925 actually favored complete abandonment by the states of inheritance taxation of nonresidents' intangible property, but agreed on reciprocity as the course most palatable to the state legislatures. (Edmonds, Reciprocity in Inheritance Taxation (1927) 20 Proceedings Nat'l Tax Assn. 415-431.)
[5] Indeed, the California Supreme Court made note of the problem when it observed that "The problem of multiple taxation of intangibles by two or more states or countries has to some extent been eliminated, however, by state exemption of intangibles owned by domiciliaries of other states and by reciprocity arrangements with other countries. (E.g., Rev. & Tax. Code, § 13851.)" (Estate of Banerjee (1978) 21 Cal.3d 527, 534, fn. 6 [147 Cal. Rptr. 157, 580 P.2d 657].)
[6] Section 13303 of the Revenue and Taxation Code reads as follows: "`Estate' or `property' means the real or personal property or interest therein of a decedent or transferor, and includes all of the following: [¶] (a) All intangible personal property of a resident decedent within or without the State or subject to the jurisdiction thereof. [¶] (b) All intangible personal property in California belonging to a deceased nonresident of the United States, including all stock of a corporation organized under the laws of California or which has its principal place of business or does the major part of its business in California or of a federal corporation or national bank which has its principal place of business or does the major part of its business in California, excluding, however, savings accounts in saving and loan associations operating under the authority of the Division of Savings and Loan or the Federal Home Loan Bank board and bank deposits, unless such deposits are held and used in connection with a business conducted or operated, in whole or in part, in California." (Italics added.)